IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MUSTAPHA BOURARA, M.D. | : | CIVIL ACTION NO: *17 - 7895* |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE NEW YORK HOTEL TRADES | : | |
| COUNCIL AND HOTEL ASSOCIATION | : | |
| OF NEW YORK CITY, INC., EMPLOYEE | : | |
| BENEFIT FUNDS | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT AND JURY DEMAND

## I.    PRELIMINARY STATEMENT

This is an action for an award of damages, attorney's fees and other relief on behalf of Plaintiff, Mustapha Bourara, M.D. ("Plaintiff"), a former employee of Defendant, New York Hotel Trades Council & Hotel Association of New York City, Inc. [Employee Benefit Funds] ("Defendant").  Plaintiff has been harmed by Defendant's discriminatory employment practices alleged herein.  The action is brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq., as amended by the Civil Rights Act of 1991 (codified at 42 U.S.C. §1981(a)); the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. §12101 et seq. (the "ADA"); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §290 et seq.; and the New York City Human Rights Law ("NYCHRL"), Admin. Code §8–101 et seq.  Plaintiff alleges that Defendant unlawfully discharged him on August 10, 2015 because he had a disability, and had complained to Defendant of discrimination due to his sex and color.

II.    **JURISDICTION AND VENUE**

1.      The Court has jurisdiction over Plaintiff's claims arising under the ADA pursuant to 28 U.S.C. §1331.

2.      The Court has jurisdiction over Plaintiff's claims arising under Title VII pursuant to 28 U.S.C. §1331 and 42 U.S.C. §2000e–(5)(f)(3).

3.      The Court has supplemental jurisdiction over Plaintiff's claims arising under the NYSHRL and the NYCHRL pursuant to 28 U.S.C. §1367(a).

4.      All administrative conditions precedent to the filing of this action have been fulfilled by Plaintiff.

5.      On or about May 11, 2016, Plaintiff filed a timely Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") pursuant to the ADA and Title VII, in which Plaintiff complained of acts and practices of discrimination and retaliation alleged herein.

6.      On July 20, 2017, the EEOC issued to Plaintiff a "Notice of Suit Rights" (the "EEOC Notice"), informing Plaintiff that he was required to file a lawsuit against Defendant pursuant to Title VII and the ADA within ninety (90) days of his receipt of the EEOC Notice.  A true and correct copy of the EEOC Notice is attached hereto as Exhibit "A".

7.       Plaintiff received the EEOC Notice on or after July 24, 2017.

8.      This action is timely under Title VII and the ADA because it has been filed within ninety (90) days of Plaintiff's receipt of the EEOC Notice.

9.      Within ten (10) days of the filing of this action, Plaintiff will serve a copy of this Complaint upon the New York City Division of Human Rights and Corporation Counsel, as required by the NYCHRL.

10.     Plaintiff has satisfied all other jurisdictional prerequisites to the maintenance of this action.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and (c) because Defendant resides here; and in addition, the events and occurrences giving rise to Plaintiff's claims occurred here.

12.     Venue is proper in this judicial district pursuant to 42 U.S.C. §2003e-(5)(f)(3) because the unlawful employment practices which are the subject of the action occurred here; and also, employment records relevant to those practices are maintained or administered here.

III.   **PARTIES**

13.     Plaintiff is an adult male and a citizen of the State of New York, residing at 32-17 45th Street, 3rd Floor, Astoria, NY 11103.

14.     Defendant is a corporation or other legal entity organized and existing under the laws of the State of New York, with its principal place of business located at 305 W. 44th Street, New York, NY 10036.

15.     At all relevant times, Defendant acted through its agents, servants and employees, acting within the scope of their authority, in the course of their employment, and in furtherance of the mission, affairs and corporate policies of Defendant.

16.     Defendant is and at all relevant times was a "person" and an "employer" as defined by Title VII, the ADA, the NYSHRL, and the NYCHRL.

3

17.     At all relevant times, Plaintiff was a "person" and an "employee" of

Defendant within the meaning of Title VII, the ADA, the NYSHRL, and the NYCHRL.

IV.     **STATEMENT OF FACTS**

18.     Plaintiff, a White Male, is and at all relevant times was a licensed

physician specializing in Obstetrics and Gynecology.

19.     Defendant has at all relevant times operated four health care facilities in

New York City that provide medical and dental care to individuals working in New York

City's hotel industry.

20.     The four health care facilities operated by Defendant, known as "Health

Centers," are located in Queens, Brooklyn, Harlem and Midtown Manhattan.

21.     On or about January 26, 2010, Plaintiff became employed by Defendant

as an Obstetrician/Gynecologist ("Ob/Gyn") at Defendant's Queens Health Center (the

"QHC").

22.     Plaintiff was employed by Defendant as an Ob/Gyn at the QHC from

January of 2010 until August 10, 2015.

23.     After commencing employment with Defendant, Plaintiff reported to Dr.

Christopher Wang, Medical Director of the QHC, from January 2010 until 2012.

24.     In or around 2012, Dr. Marshal Reminick replaced Dr. Wang as Medical

Director of the QHC; and Plaintiff reported to Dr. Reminick from the time of Dr.

Reminick's appointment as Medical Director until December 2014.

25.     From January 2010 until December 2014, Plaintiff performed his job

responsibilities for Defendant competently and satisfactorily.

4

26.     The most lucrative part of Plaintiff's job at Defendant was Obstetrics (deliveries); and Plaintiff was paid a pre-established fee for each delivery he performed.

27.     As a result of Plaintiff's skills, reputation and performance, the number of deliveries that Plaintiff performed as an employee of Defendant rose steadily from 2010 to 2014.

28.     When Dr. Reminick left the QHC in December 2014, he was replaced by Dr. Doreen Sweeting, a Black Female, as Medical Director of the QHC.

29.     Plaintiff reported to Dr. Sweeting, in her capacity as Medical Director of the QHC, from December 2014 until Plaintiff was terminated by Defendant on August 10, 2015.

30.     In 2015, and prior thereto, Plaintiff was one of three Ob/Gyns working at the QHC; and the other Ob/Gyns were Dr. Gulbahar Donn (East Indian Female) and Dr. Helen Na-Chuang (Asian Female).

31.     Dr. Donn and Dr. Na-Chuang reported to Dr. Sweeting from December 2014 until August 10, 2015, and thereafter.

32.     Beginning in or around February 2015, the number of new pregnant Obstetrics patients who were being assigned to Plaintiff by Defendant began to plummet; and those patients were now being unfairly and disproportionally referred to Plaintiff's female colleagues, Dr. Donn and Dr. Na-Chuang.

33.     In 2015, Plaintiff complained to Dr. Sweeting and to Defendant's Director of Health Center Operations, Sarina Jean-Louis (Black Female), about Defendant's recent practice of referring most new Obstetrics patients to Dr. Donn and Dr. Na-Chuang, to the exclusion of Plaintiff.

5

34.     When Plaintiff went to Dr. Sweeting's office in 2015 to complain that he was now receiving comparatively few referrals of Obstetrics patients whereas before 2015 he had been assigned a higher percentage of those patients, Dr. Sweeting refused to make eye contact with Plaintiff or to respond to him verbally; and instead, she was looking at her computer screen when Plaintiff was talking to her.

35.     In addition, in 2015, after Dr. Sweeting became the Medical Director for the QHC,  Defendant assigned a nurse who lacked adequate Ob/Gyn training to work with Plaintiff; and this assignment, which continued for months despite Plaintiff's protestations, impeded Plaintiff's ability to perform his job to the best of his ability.

36.     Furthermore, in 2015, after Dr. Sweeting was hired as Medical Director of the QHC, Defendant unilaterally scheduled Plaintiff to see a postpartum patient of Dr. Na-Chuang, even though Dr. Na-Chuang had provided the prenatal care to the patient and was the patient's primary doctor.

37.     After Plaintiff complained to Defendant about being scheduled to treat Dr. Na-Chuang's postpartum patient, Plaintiff was called into a meeting with Dr. Sweeting, who berated Plaintiff for complaining; and when Plaintiff attempted to explain to Dr. Sweeting concerns he had regarding possible malpractice liability, Dr. Sweeting angrily said to Plaintiff, "I do not care, you are here to see the patients we want you to see."

38.     Prior to 2015, Plaintiff at times gave small gifts to employees and staff members of Defendant during the holiday season to show his gratitude and appreciation; and before 2015, Plaintiff was not reprimanded or criticized by Defendant for his gift giving.

6

39.     However, in 2015, Dr. Sweeting and Ms. Jean-Louis scheduled a meeting with Plaintiff, Dr. Donn and Dr. Na-Chuang at which Dr. Sweeting stated, while looking only at Plaintiff, that if anyone were to give gifts to employees in the future, they would be terminated; and after the meeting, Plaintiff abided by Dr. Sweeting's directive.

40.     In or around April 2015, Plaintiff arranged for a meeting with Jordan Beasley (White Male), Provider Relations Director for Defendant's Health Centers, at which Plaintiff complained to Mr. Beasley about the unfair and discriminatory practices that were being perpetrated against him by Dr. Sweeting and other members of the QHC management team who were acting in collaboration with Dr. Sweeting.

41.     At his meeting with Mr. Beasley, Plaintiff mentioned the steep decline in the number of pregnant Obstetrics patients who were being assigned to him; that most of the Obstetrics patients were now being referred to the female Ob/Gyns, whereas previously, he had received a larger and fairer portion of those referrals; that he had been assigned a nurse who lacked proper Ob/Gyn training; that he had been compelled to treat one of Dr. Na-Chuang's postpartum patients; and that he had been unfairly threatened by Dr. Sweeting for giving gifts during the holiday season.

42.     Plaintiff further complained to Mr. Beasley during their meeting that as a result of the aforementioned acts and practices, Plaintiff was being discriminated against by Dr. Sweeting and Defendant because he was a White Male, and that Dr. Sweeting was trying to force him to quit.

43.     Plaintiff is unaware of any investigation that was performed by Defendant regarding the complaint of discrimination he made to Mr. Beasley during their meeting.

44.     On May 12, 2015, Plaintiff slipped and fell on a waxed floor, as a result of which he sustained severe and painful bodily injuries (the "Fall").

45.     The bodily injuries that Plaintiff suffered in the Fall included multiple fractured ribs and a torn right rotator cuff; and those injuries prevented Plaintiff from being able to lift or fully move his right arm for a significant period of time.

46.     The bodily injuries that Plaintiff suffered in the Fall caused Plaintiff to have a disability within the meaning of the ADA, the NYSHRL, and the NYCHRL.

47.     At all relevant times after May 12, 2015, Dr. Sweeting and Defendant were aware of the nature and severity of Plaintiff's bodily injuries sustained in the Fall.

48.     As a result of the bodily injuries he suffered in the Fall, Plaintiff was unable to work from May 12, 2015 until on or about May 31, 2015.

49.     On or about that May 26, 2015, Plaintiff was seen by a chiropractic doctor at the QHC who reported in writing, inter alia, that: (a) Plaintiff was experiencing sharp, extreme and constant back and thoracic pain that was radiating to the right side of his chest; (b) Plaintiff's symptoms were exacerbated by lifting or movement; (c) the doctor's examination of Plaintiff revealed the presence of muscle spasm, muscle tightness and stiffness around the thoracic region; and (d) an orthopedic consultation was appropriate.

50.     After being out of work for approximately two weeks due to the bodily injuries he sustained in the Fall, Plaintiff had a telephone conversation with Dr. Sweeting in which he informed Dr. Sweeting that he was still unable to return to work and that he still could not move or lift his right arm.

51.     Dr. Sweeting responded to Plaintiff, "that is not my problem," and she ordered Plaintiff to return to work forthwith.

8

52.   Fearing that Dr. Sweeting would terminate his employment if he took any more time off due to his disability, Plaintiff returned to work in late May or early June 2015.

53.   A pulmonologist who evaluated Plaintiff following the Fall cleared Plaintiff to return to work on May 31, 2015, but the pulmonologist did not see or treat Plaintiff for the orthopedic injuries he sustained in the Fall, but rather, the pulmonologist saw Plaintiff for an incidental, non-trauma related finding of a small pulmonary nodule seen on an imaging study performed on the day of the Fall; and in addition, the pulmonologist — who worked at the QHC — did not state or report that Plaintiff was able to return to work without restrictions or that Plaintiff had fully recovered from his orthopedic injuries.

54.   After returning to work in late May or early June 2015, Plaintiff continued to perform his job functions notwithstanding his disability, which persisted until the time of his termination on August 10, 2015, and thereafter.

55.   At all relevant times after Plaintiff returned to work, his bodily injuries sustained in the Fall substantially limited at least one major life activity, prevented him from performing at least one normal bodily function, and were medically diagnosable.

56.   On June 29, 2015, Plaintiff had a diagnostic imaging study which confirmed that he had suffered nine fractured ribs as a result of the Fall.

57.   On or about July 6, 2015, Plaintiff was seen by an orthopedist at the QHC who reported in writing that Plaintiff had suffered multiple rib fractures that were still tender and that there was a concern about impingement in Plaintiff's right shoulder.

9

58.     On or about July 20, 2015, Plaintiff returned to the orthopedist for further evaluation; and on that visit, the doctor reported in writing that Plaintiff's pain was worsening and that he should obtain a second opinion.

59.     On or about July 28, 2015, Plaintiff was evaluated by another orthopedist, who reported in writing that Plaintiff had suffered multiple rib fractures as a result of the Fall; that there was a concern about impingement in Plaintiff's right shoulder; and that an MRI should be performed to rule out a right rotator cuff tear.

60.     As requested by the second orthopedist, an MRI of Plaintiff's right shoulder was performed on August 3, 2015; and that study revealed the presence of tendinopathy and partial-thickness rotator cuff tears of Plaintiff's right shoulder, further confirming that Plaintiff still had a disability that was responsible for his ongoing pain, limitations and restrictions.

61.     Despite the nature, persistence and severity of Plaintiff's bodily injuries suffered in the Fall, Dr. Sweeting showed no sympathy or compassion for Plaintiff's condition or disability after he returned to work; and on one occasion, she chastised Plaintiff in front of one of his professional colleagues for briefly discussing his medical condition with the colleague but she did not reprimand the colleague.

62.     On August 10, 2015, Plaintiff was summoned to Dr. Sweeting's office for a meeting with Dr. Sweeting, Ms. Jean-Louis and Defendant's HR Director, Bill Torres (the "August 10, 2015 Meeting").

63.     At the August 10, 2015 Meeting, Dr. Sweeting informed Plaintiff that his employment was being terminated because of his "disruptive behavior."

64.     After being informed by Dr. Sweeting at the August 10, 2015 Meeting that his employment was being terminated, Plaintiff disputed the decision, telling Dr. Sweeting that he was an excellent doctor; and in response to Plaintiff's protest, Dr. Sweeting said to Plaintiff, "it has nothing to do with your medical competence, it is your disruptive behavior."

65.     Dr. Sweeting failed to state or explain to Plaintiff what she meant by "disruptive behavior."

66.     In May 2017, Plaintiff learned for the first time that Defendant was claiming that it discharged Plaintiff because he had scheduled three medical appointments for his personal health issues (collectively, the Medical Appointments") at times when he was scheduled to see patients at the QHC (the "proffered reason").

67.     The proffered reason is not valid, plausible or legitimate, for the following reasons:

(a)     The Medical Appointments took place after Plaintiff returned to work following the Fall;

(b)     Plaintiff scheduled and went to the Medical Appointments because he needed treatment for the injuries he suffered in the Fall which caused him to have a disability;

(c)     The doctors who Plaintiff saw for the Medical Appointments had limited office hours and Plaintiff could only see them when they were available to fit Plaintiff into their schedules;

(d)     As a result of going to the Medical Appointments, Plaintiff did not miss, and was not late for any appointments with his own patients at the QHC, and

11

Defendant therefore cannot demonstrate that it suffered any hardship or business disruption because Plaintiff went to the Medical Appointments; and

(e)   The health insurance provided by Defendant to Plaintiff only allowed Plaintiff to see providers at locations operated by or affiliated with Defendant.

## COUNT I

### (ADA — Discrimination Because of Disability)

68.   Plaintiff incorporates by reference all of the allegations of Paragraphs 1 through 67, above, as if set forth fully and at length herein.

69.   At all relevant times, including from May 12, 2015 through August 10, 2015, Plaintiff had a disability as defined by the ADA.

70.   At all relevant times, Defendant was aware of the existence of Plaintiff's disability.

71.   At all relevant times, including from the time he returned to work following the Fall until August 10, 2015, Plaintiff was a qualified individual within the meaning of the ADA.

72.   Notwithstanding Plaintiff's disability and his status as a qualified individual, Defendant terminated Plaintiff's employment on August 10, 2015.

73.   Plaintiff's disability was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

74.   Defendant's disability was a determinative factor in Defendant's decision to terminate Plaintiff's employment.

75.    Prior to Plaintiff being informed of the termination of his employment, Dr. Sweeting and Defendant treated Plaintiff with antagonism and hostility because of his disability.

76.    Defendant's proffered reason for its decision to terminate Plaintiff's employment is a pretext for disability discrimination.

77.    Plaintiff is entitled to declaratory relief that Defendant violated Plaintiff's rights under the ADA, as well as equitable relief enjoining the Defendant from committing further violations of the ADA.

78.    As a result of Defendant's termination of Plaintiff's employment in violation of the ADA, Plaintiff has suffered and will suffer economic harm in the form of lost wages, loss of salary and loss of employee benefits, as a result of which Plaintiff is entitled to an award of back pay as well as an award of front pay.

79.    As an alternative to front pay, Plaintiff seeks equitable and injunctive relief in the form of reinstatement to the employment of Defendant, with all attendant rights and benefits.

80.    As a further result of Defendant's termination of Plaintiff's employment in violation of the ADA, Plaintiff has suffered and will suffer pain, suffering, inconvenience, mental anguish, emotional distress, embarrassment, humiliation, loss of self-esteem and loss of enjoyment of life, for which Plaintiff is entitled to an award of compensatory damages.

81.    Defendant's termination of Plaintiff's employment in violation of the ADA was committed by one or more management officials of Defendant, acting with malice

13

and/or reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to an award of punitive damages.

82.      To further remedy Defendant's termination of Plaintiff's employment in violation of the ADA, Plaintiff is entitled to prejudgment interest on any award of damages he recovers.

83.      To further remedy Defendant's termination of Plaintiff's employment in violation of the ADA, Plaintiff is entitled to an award of attorney's fees, costs and expert fees.

## COUNT II

### (NYSHRL — Discrimination Because of Disability)

84.      Plaintiff incorporates by reference all of the allegations of Paragraphs 1 through 83, above, as if set forth fully and at length herein.

85.      At all relevant times, including from May 12, 2015 through August 10, 2015, Plaintiff had a disability within the meaning of the NYSHRL.

86.      At all relevant times, Defendant was aware of the existence of Plaintiff's disability.

87.      At all relevant times, Plaintiff, despite his disability, was qualified to perform the activities of his job in a reasonable manner.

88.      Notwithstanding Plaintiff's disability and qualifications, Defendant terminated Plaintiff's employment on August 10, 2015.

89.      Defendant terminated Plaintiff's employment because of his disability, in violation of the NYSHRL.

14

90.     Plaintiff's disability was a motivating and/or determinative factor in Defendant's decision to terminate Plaintiff's employment.

91.     Defendant lacked a legitimate non-discriminatory reason for terminating Plaintiff's employment.

92.     Plaintiff is entitled to an order declaring that Defendant violated Plaintiff's rights under the NYSHRL, as well as equitable relief compelling the Defendant to cease its unlawful employment practices.

93.     As a result of Defendant's termination of Plaintiff's employment in violation of the NYSHRL, Plaintiff has suffered and will suffer economic harm in the form of lost wages, loss of salary and loss of benefits, as a result of which Plaintiff is entitled to an award of back pay as well as an award of front pay.

94.     As an alternative to front pay, Plaintiff seeks equitable and injunctive relief in the form of reinstatement to the employment of Defendant, with all attendant rights and benefits.

95.     As a further result of Defendant's termination of Plaintiff's employment in violation of the NYSHRL, Plaintiff has suffered and will suffer pain, suffering, inconvenience, mental anguish, emotional distress, embarrassment, humiliation, loss of self-esteem and loss of enjoyment of life, for which Plaintiff is entitled to an award of compensatory damages.

96.     To further remedy Defendant's termination of Plaintiff's employment in violation of the NYSHRL, Plaintiff is entitled to prejudgment interest on any award of damages he recovers.

## COUNT III

### (NYCHRL — Discrimination Because of Disability)

97.     Plaintiff incorporates by reference all of the allegations of Paragraphs 1 through 96, above, as if set forth fully and at length herein.

98.     At all relevant times, including from May 12, 2015 through August 10, 2015, Plaintiff had a disability within the meaning of the NYCHRL.

99.     At all relevant times, Defendant was aware of the existence of Plaintiff's disability.

100.    Notwithstanding Plaintiff's disability, Defendant terminated Plaintiff's employment on August 10, 2015.

101.    Defendant terminated Plaintiff's employment because of his disability, in violation of the NYCHRL.

102.    Plaintiff's disability was a motivating and/or determinative factor in Defendant's decision to terminate Plaintiff's employment.

103.    Defendant lacked a legitimate non-discriminatory reason for terminating Plaintiff's employment.

104.    Plaintiff is entitled to an order declaring that Defendant violated Plaintiff's rights under the NYCHRL, as well as an order enjoining the Defendant from committing further violations of the NYCHRL.

105.    As a result of Defendant's termination of Plaintiff's employment in violation of the NYCHRL, Plaintiff has suffered and will suffer economic harm in the form of lost wages, loss of salary and loss of benefits, as a result of which Plaintiff is entitled to an award of back pay as well as an award of front pay.

16

106.    As an alternative to front pay, Plaintiff seeks equitable and injunctive relief in the form reinstatement to the employment of Defendant, with all attendant rights and benefits.

107.    As a further result of Defendant's termination of Plaintiff's employment in violation of the NYCHRL, Plaintiff has suffered and will suffer pain, suffering, inconvenience, mental anguish, emotional distress, embarrassment, humiliation, loss of self-esteem and loss of enjoyment of life, for which Plaintiff is entitled to an award of compensatory damages.

108.    Because Defendant acted with malice and/or reckless indifference to Plaintiff's rights under the NYCHRL when it terminated Plaintiff's employment, Plaintiff is entitled to an award of punitive damages.

109.    To further remedy Defendant's termination of Plaintiff's employment in violation of the NYCHRL, Plaintiff is entitled to prejudgment interest on any award of damages he recovers.

110.    To further remedy Defendant's termination of Plaintiff's employment in violation of the NYCHRL, Plaintiff is entitled to an award of attorney's fees, costs and expert fees.

### COUNT IV

### (Title VII — Retaliation Claim)

111.    Plaintiff incorporates by reference all of the allegations of Paragraphs 1 through 110, above, as if set forth fully and at length herein.

112.   Plaintiff engaged in protected activity under Title VII when he complained to Mr. Beasley that he had been discriminated against by Defendant because of his sex and color.

113.   When he made his complaint to Mr. Beasley, Plaintiff was acting under a good faith reasonable belief that his right to be free from discrimination on the basis of sex and color had been violated by Defendant.

114.   At all relevant times, Defendant had knowledge of Plaintiff's protected activity under Title VII.

115.   Plaintiff was subjected to a materially adverse employment action after he engaged in the protected activity, when Defendant terminated his employment.

116.   There was a causal connection between Plaintiff's protected activity and the termination of his employment.

117.   Plaintiff's protected activity was a motivating factor and/or had a determinative effect on the termination of his employment.

118.   Plaintiff is entitled to declaratory relief that Defendant violated Plaintiff's rights under Title VII, as well as equitable relief enjoining the Defendant from committing further violations of Title VII.

119.   As a result of Defendant's termination of Plaintiff's employment in violation of Title VII, Plaintiff has suffered and will suffer economic harm in the form of lost wages, loss of salary and loss of employee benefits, as a result of which Plaintiff is entitled to an award of back pay as well as an award of front pay.

120.    As an alternative to front pay, Plaintiff seeks equitable and injunctive relief in the form of reinstatement to the employment of Defendant, with all attendant rights and benefits.

121.    As a further result of Defendant's termination of Plaintiff's employment in violation of Title VII, Plaintiff has suffered and will suffer pain, suffering, inconvenience, mental anguish, emotional distress, embarrassment, humiliation, loss of self-esteem and loss of enjoyment of life, for which Plaintiff is entitled to an award of compensatory damages.

122.    Defendant's termination of Plaintiff's employment in violation of Title VII was committed by one or more management officials of Defendant, acting with malice and/or reckless inference to Plaintiff's federally protected rights, thereby entitling Plaintiff to an award of punitive damages.

123.    To further remedy Defendant's termination of Plaintiff's employment in violation of Title VII, Plaintiff is entitled to prejudgment interest on any award of damages he recovers.

124.    To further remedy Defendant's termination of Plaintiff's employment in violation of Title VII, Plaintiff is entitled to an award of attorney's fees, costs and expert fees.

## COUNT V

### (NYSHRL — Retaliation Claim)

125.    Plaintiff incorporates by reference all of the allegations of Paragraphs 1 through 124, above, as if set forth fully and at length herein.

126.    Plaintiff engaged in protected activity under the NYSHRL when he complained to Mr. Beasley of discrimination because of his sex and color.

127.    When Plaintiff made his complaint to Mr. Beasley, he was acting under a good faith reasonable belief that his right to be free from discrimination on the basis of his sex and color had been violated by Defendant.

128.    At all relevant times, Defendant had knowledge of Plaintiff's protected activity under the NYSHRL.

129.    Plaintiff was subjected to a materially adverse employment action after he engaged in the protected activity, when Defendant terminated his employment.

130.    Defendant terminated Plaintiff's employment because of his protected activity.

131.    There was a causal connection between Plaintiff's protected activity and the termination of his employment.

132.    Plaintiff's protected activity was a motivating factor and/or had a determinative effect on the termination of his employment.

133.    Plaintiff is entitled to an order declaring that Defendant violated Plaintiff's rights under the NYSHRL, as well as equitable relief compelling the Defendant to cease its unlawful employment practices.

134.    As a result of Defendant's termination of Plaintiff's employment in violation of the NYSHRL, Plaintiff has suffered and will suffer economic harm in the form of lost wages, loss of salary and loss of benefits, as a result of which Plaintiff is entitled to an award of back pay as well as an award of front pay.

135.    As an alternative to front pay, Plaintiff seeks equitable and injunctive relief in the form of reinstatement to the employment of Defendant, with all attendant rights and benefits.

136.    As a further result of Defendant's termination of Plaintiff's employment in violation of NYSHRL, Plaintiff has suffered and will suffer, pain, suffering, inconvenience, mental anguish, emotional distress, embarrassment, humiliation, loss of self-esteem and loss of enjoyment of life, for which Plaintiff is entitled to an award of compensatory damages.

137.    To further remedy Defendant's termination of Plaintiff's employment in violation of the NYSHRL, Plaintiff is entitled to prejudgment interest on any award of damages he recovers.

## COUNT VI

### (NYCHRL — Retaliation Claim)

138.    Plaintiff incorporates by reference all of the allegations of Paragraphs 1 through 137, above, as if set forth fully and at length herein.

139.    Plaintiff engaged in protected activity under the NYCHRL when he complained to Mr. Beasley of discrimination because of his sex and color.

140.    When Plaintiff made his complaint to Mr. Beasley, he was acting under a good faith reasonable belief that his right to be free from discrimination on the basis of his sex and color had been violated by Defendant.

141.    At all relevant times, Defendant had knowledge of Plaintiff's protected activity under the NYCHRL.

142.   Plaintiff was subjected to a materially adverse employment action after he engaged in the protected activity, when Defendant terminated his employment.

143.   Defendant terminated Plaintiff's employment because of his protected activity.

144.   There was a causal connection between Plaintiff's protected activity and the termination of his employment.

145.   Plaintiff's protected activity was a motivating factor and/or had a determinative effect on the termination of his employment.

146.   Plaintiff is entitled to an order declaring that Defendant violated Plaintiff's rights under the NYCHRL, as well as equitable relief compelling the Defendant to cease committing any further violations of the NYCHRL.

147.   As a result of Defendant's termination of Plaintiff's employment in violation of the NYCHRL, Plaintiff has suffered and will suffer economic harm in the form of lost wages, loss of salary and loss of benefits, as a result of which Plaintiff is entitled to an award of back pay as well as an award of front pay.

148.   As an alternative to front pay, Plaintiff seeks equitable and injunctive relief in the form of reinstatement to the employment of Defendant, with all attendant rights and benefits.

149.   As a further result of Defendant's termination of Plaintiff's employment in violation of the NYCHRL, Plaintiff has suffered and will suffer, pain, suffering, inconvenience, mental anguish, emotional distress, embarrassment, humiliation, loss of self-esteem and loss of enjoyment of life, for which Plaintiff is entitled to an award of compensatory damages.

150.    Because Defendant acted with malice and/or reckless indifference to Plaintiff's rights under the NYCHRL when it terminated Plaintiff's employment, Plaintiff is entitled to an award of punitive damages.

151.    To further remedy Defendant's termination of Plaintiff's employment in violation of the NYCHRL, Plaintiff is entitled to prejudgment interest on any award of damages he recovers.

152.    To further remedy Defendant's termination of Plaintiff's employment in violation of the NYCHRL, Plaintiff is entitled to an award of attorney's fees, costs and expert fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant him the following relief:

(a)    Declaring that the acts and practices of Defendant complained of herein were in violation of the ADA, Title VII, the NYSHRL and the NYCHRL;

(b)    Granting appropriate injunctive and equitable relief, including but without limitation enjoining the Defendant from committing further violations of the ADA, Title VII, the NYSHRL and the NYCHRL, and compelling the Defendant to take measures to prevent future violations;

(c)    Awarding Plaintiff back pay in the form of lost wages, loss of earnings and loss of employee benefits;

(d)    Awarding Plaintiff front pay representing future lost wages, loss of earnings and loss of employee benefits;

(e)    In lieu of front pay, ordering the reinstatement of Plaintiff to the employment of Defendant, with all attendant rights and benefits;

23

(f)      Awarding compensatory damages to Plaintiff for pain, suffering, inconvenience, mental anguish, emotional distress, embarrassment, humiliation, loss of self-esteem and loss of enjoyment of life;

(g)      Awarding prejudgment interest to Plaintiff;

(h)      Awarding punitive damages to Plaintiff;

(i)      Awarding Plaintiff reasonable attorney's fees, costs of suit and expert fees; and

(j)      Granting such other relief that is just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues for which a jury trial is available.

**SIDNEY L. GOLD & ASSOCIATES, P.C.**

By:      /s/ Sidney L. Gold, Esquire SG1951
Sidney L. Gold, Esquire
SDNY#:  SG1951
1835 Market Street, Suite 515
Philadelphia, PA 19103
SGold@DiscrimLaw.net
(215) 569-1999
Attorney for Plaintiff

Dated: October 13, 2017

24