UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MUSTAPHA BOURARA,

                Plaintiff,                17-CV-07895(DCF)

vs.

THE NEW YORK HOTEL TRADES COUNCIL &
HOTEL ASSOCIATION OF NEW YORK CITY,
INC. EMPLOYEE BENEFIT FUNDS,

                Defendant.

_____

# DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**KANE KESSLER P.C.**
666 Third Avenue- 23rd Floor
New York, New York 10017
(212) 519-5129

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT.............................................................................................................................2

    I.    BOURARA HAS FAILED TO MAKE OUT A PRIMA FACIE CASE OF DISABILITY DISCRIMINATION .........................................................2

        A.    It is undisputed that Bourara Presented a Return to Work Clearance Form from His Physician with No Specified Restrictions and He Never Requested Any Workplace Accommodation for His Alleged Disability .................................................2

        B.    Bourara Cannot Establish That The Funds Had Notice And Terminated His Employment Because Of His Alleged Disability............................................................................................................3

    II.    DEFENDANT HAS ESTABLISHED BOURARA ENGAGED IN THEFT OF TIME AND NEGLECT OF HIS PATIENT DUTIES CONSTITUTING A LEGITIMATE REASON FOR HIS DISCHARGE..............................................................................................................7

    III.    CHIEF MEDICAL OFFICER DR. JARVIS TERMINATED BOURARA FOR LEGITIMATE, NONDISCRIMINATORY REASONS AND HAD NO KNOWLEDGE OF BOURARA'S ALLEGED DISABILITY ......................................................................................9

CONCLUSION........................................................................................................................11

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Barnett v. Revere Smelti*ng *Ref. Corp.*,
   67 F. Supp. 2d 378 (S.D.N.Y. 1999) .................................................................................... 9

*Brown v. Connecticut,*
   2010 WL 2220580 (D. Conn. May 27, 2010) ...................................................................... 5

*Brown v. The Pension Bds.,*
   488 F. Supp. 2d 395 (S.D.N.Y. 2007) ........................................................................ *passim*

*Dorfman v. Doar Comm'ns, Inc.*,
   314 Fed. Appx. 389 (2d. Cir. 2009) ...................................................................................... 2

*Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program*,
   198 F.3d 68 (2d Cir. 1999) .................................................................................................... 1

*McBride v. BIC Consumer Prods. Mfg. Co.,*
   583 F.3d 92 (2d Cir. 2009) .................................................................................................... 1

*McCoy v. Morningside at Home*,
   2014 WL 737364 (SDNY 2014) ................................................................................. *passim*

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973) .............................................................................................................. 1

*McMillan v. City of New York,*
   711 F.3d 120 (2d Cir. 2013) .............................................................................................. 1, 4

*Pacenza v. IBM Corp.*,
   2009 WL 890060 (S.D.N.Y., Apr. 2, 2009) .......................................................................... 4

*Piccolo v. Wal-Mart*,
   2012 WL 1965440 (W.D.N.Y. May 31, 2012) ..................................................................... 4

*Prophete-Camille v. Stericycle, Inc.,*
   2017 WL 570769 (E.D.N.Y. Feb. 13, 2017) ....................................................................... 10

*Raytheon Co. v. Hernandez*,
   540 U.S. 44 (2003) ........................................................................................................... 4, 9

*Rodriguez v. Atria Sr. Living Group, Inc.*,
   887 F. Supp. 2d 503 (S.D.N.Y. 2012) .................................................................................... 5

*Ryan v. Grae & Rybicki, P.C.*,
   135 F.3d 867 (2d Cir. 1998) .................................................................................................. 4

Sista v. CDC Ixis North America, Inc.,
   445 F.3d 161 (2d Cir. 2006) ............................................................................................. 1, 4

*Thomsen v. Stanec,*
   785 F. Supp. 2d 20 (W.D.N.Y. 2011) ................................................................................... 4

*Vasquez v. Empress Ambulance Serv., Inc.*,
   835 F.3d 267 (2d Cir. 2016) ............................................................................................ 9, 10

*Volmar v Cold Spring Hills Ctr. for Nursing & Rehabilitation*,
   395 Fed Appx 795 (2d Cir 2010) ......................................................................................... 9

*Watson v. Arts & Entertainment Television Network*,
   2008 WL 793596 (S.D.N.Y. Mar. 26, 2008) .................................................................... 4, 5

Statutes

42 U.S.C. §§ 12112 ...................................................................................................................... 1

## PRELIMINARY STATEMENT

Defendant, The New York Hotel Trades Council & Hotel Association Of New York City, Inc. Employee Benefit Funds ("the Funds" or Defendant), by its attorneys, Kane Kessler P.C., respectfully submits this reply memorandum of law in response to Plaintiff's memorandum of law in opposition and in further support of its motion for summary judgment on the First Amended Complaint ("Complaint") of Plaintiff Mustapha Bourara ("Bourara" or "Plaintiff") (Dkt. 27).[1]

Bourara has not made out a *prima facie* case under the Americans with Disabilities Act of 1990 42 U.S.C. §§ 12112 et seq. (the "ADA"), the New York State Human Rights Law or the New York City Human Rights Law.[2] The essential elements of a disability discrimination claim require that Bourara show both that he was disabled within the meaning of the ADA and that he was terminated because of his disability. Here, the undisputed evidence shows that 1) Bourara submitted a physician's note returning him to work without specifying that Bourara had any restrictions; and 2) he did not ever request any workplace accommodation. Bourara performed his OB/GYN job duties for two months after returning to work and the Funds had no knowledge of his alleged disability at the time of his termination. Bourara cannot establish a *prima facie*

---

[1] A notice of motion and the declaration of Jennifer M. Schmalz, Esq., with exhibits, was previously submitted in support of this motion. Exhibits cited herein, including the deposition transcripts, are attached as exhibits to that declaration, cited as Schmaltz Dec., Exh. ___.

[2] Bourara's ADA claim is subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (citing *McBride v. BIC Consumer Prods. Mfg. Co*., 583 F.3d 92, 96 (2d Cir. 2009)). This analysis requires that: "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge [or other form of discriminatory action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis North America, Inc.,* 445 F.3d 161, 169 (2d Cir. 2006) (citing *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program*, 198 F.3d 68, 72 (2d Cir. 1999)).

case based on "purely conclusory allegations of discrimination, absent any concrete particulars." *Dorfman v. Doar Comm'ns, Inc.*, 314 Fed. Appx. 389, 390 (2d. Cir. 2009).

The Funds have unequivocally set forth the legitimate, non-discriminatory reason for his termination: theft of time and neglect of patient duties.  *Bourara admits in his opposition papers and in his deposition that he attended two personal medical appointments while on the clock and while he had patients on his schedule in the OB/GYN.  He also admits that he was chastised by his supervisor, Dr. Sweeting for attending those medical appoints during his time at work.* Plaintiff's brief in opposition at p. 6.

Although Plaintiff attempts to blame his termination on a disability, he has offered no facts that give rise to any inference of disability discrimination or that his alleged disability was a "but-for" cause of Plaintiff's termination.  Rather, it is undisputed that Plaintiff engaged in the conduct, which resulted in his termination.  Plaintiff admits that he attended two personal medical appointments while working on the clock for Defendant.  Bourara has not come forth with evidence to meet his burden of showing this reason for his termination is pretextual and must do more than merely proffer his own belief that Defendant discriminated against him.

## ARGUMENT

**I.     BOURARA HAS FAILED TO MAKE OUT A PRIMA FACIE CASE OF DISABILITY DISCRIMINATION**

    **A.     It is undisputed that Bourara Presented a Return to Work Clearance Form from His Physician with No Specified Restrictions and He Never Requested Any Workplace Accommodation for His Alleged Disability**

It is uncontroverted that the *only* documentation Dr. Bourara provided to the Funds at the time he returned in June 2015 from his leave of absence was a clearance to return to work form, with no specified restrictions, completed by his physician, Dr. Yadgarov.  See Schmalz Dec. Exh. G).  Dr. Bourara acknowledged that as a physician he understood the concept of clearance

to return to work and that he requested this clearance note from Dr. Yadgarov.  When he submitted it to the Funds, he told the Queens Health Center Administrator Sarina Jean-Louis' office to "put him on the schedule" (Schmaltz Dec., Exhs. A and D, Bourara Tr. at 56, Torres Tr. at 59).  The Funds had no reason to believe that Bourara was disabled at the time he returned from his brief leave of absence.  The alleged stray comments that he claims to have made to Dr. Sweeting about having shoulder pain are not sufficient to put her on notice of a disability under the law, particularly when he was performing his job with no restrictions and never asked for any accommodation.

It is also uncontroverted that Bourara never requested a workplace accommodation for his alleged disability (Schmaltz Dec., Exh. D, Torres at 62).  In fact, he never submitted any documentation to the Funds that would have indicated he was disabled when he returned to work on June 1, 2015 or anytime thereafter until his termination in August 2015 (Schmaltz Dec., Exhs. A and D, Bourara Tr. at 98; Torres Tr. at 62). Bourara's memorandum in opposition admits that Bourara was qualified to perform the essential functions of his job.  Bourara also confirms in his opposition that the evidence presented establishes that he, "continued to perform and complete physical examinations of his patients at the QHC – his essential job responsibility- without requesting an accommodation." (memorandum in opposition at p. 15.).

      **B.**    **Bourara Cannot Establish That The Funds Had Notice And Terminated His Employment Because Of His Alleged Disability**

Bourara cites to this Court's decision in *McCoy v. Morningside at Home*, 11 CV 2575, 2014 WL 737364 (SDNY 2014) in his memorandum in opposition at p. 16 - but the reasoning

which led the Court to grant summary judgment in *McCoy* is equally applicable in this case.[3] The district court in *McCoy* explained that to establish a *prima facie* claim under the ADA based on an adverse employment action, one element a plaintiff must show by a preponderance of the evidence is that he or she suffered an adverse employment action *because of his or her disability*. *McCoy* at 7-8 *(emphasis added)* citing *McMillan*, 711 F.3d at 125 (quoting *Sista*, 445 F.3d at 169); see also *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869-70 (2d Cir. 1998).  The Court explained that, "This fourth element, causation, necessarily incorporates an inquiry as to whether the employer had notice of the plaintiff's disability." *Id.*, See, e.g., *Pacenza v. IBM Corp.*, No. 04 Civ. 5831(PGG), 2009 WL 890060, at *10 (S.D.N.Y., Apr. 2, 2009), aff'd, 363 F. App'x 128 (2d Cir. 2010) (since his employer lacked knowledge of his alleged disability, the plaintiff failed to satisfy the fourth element because, "if [an employer was] truly unaware that . . . a disability existed, it would be impossible for [an] [employment] decision to have been based, even in part, on respondent's disability") (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 55, n. 7 (2003)); see also, *Watson v. Arts & Entertainment Television Network*, No. 04 Civ. 1932(HBP), 2008 WL 793596, at *10 (S.D.N.Y. Mar. 26, 2008), aff'd, 352 F. App'x 475 (2d Cir. 2009) ("notice to the employer of the claimed disability is an essential element of a wrongful termination case under the ADA"); *Thomsen v. Stanec,* 785 F. Supp. 2d 20, 23 (W.D.N.Y. 2011), aff'd, 483 F. App'x 620 (2d Cir. 2012), cert. denied, 133 S. Ct. 931 (2013).

The evidence in *McCoy* showed that her doctor had certified her as fit for unrestricted work and she disclaimed both mental and physical problems.  Under these circumstances, the Court found that the record could not support a rational inference that Plaintiff's employer was

---

[3] The Second Circuit Court of Appeals affirmed the *McCoy* decision granting summary judgment for the employer finding that, "McCoy's claims on appeal that she was dismissed because of her disabilities, that her employer failed to reasonably accommodate her, and that her dismissal was in retaliation for her complaints about her disabilities were without merit, substantially for the reasons stated in the district court's opinion and order."  *McCoy v. Morningside at Home & Aging in Am.*, 14-cv-737 summary order (2d Cir. 2015) citing *McCoy at* No. 11-cv-2575 (LTS), 2014 WL 737364, at *3-6 (S.D.N.Y. Feb. 25, 2014).

on notice of her disability. *McCoy* at 10 See, e.g., *Watson*, 2008 WL 793596, at *14, aff'd, 352 F. App'x 475 (granting summary judgment dismissing ADA claim where "defendant had no reason to know or even suspect that [the plaintiff] suffered an impairment that was so serious that it rose to the level of a disability within the meaning of the ADA, notwithstanding defendant's knowledge of plaintiff's injury. . . . The most defendant is chargeable with is knowledge that plaintiff suffered relatively mild injuries as a result of her fall with no suggestion of permanence"); see also *Piccolo v. Wal-Mart*, No. 11 Civ. 406S, 2012 WL 1965440, at *8 (W.D.N.Y. May 31, 2012) (employer lacked notice of disability where plaintiff "only informed [employer] that he was experiencing back and leg pain" and indicated that "he was suffering a relapse from the condition which had necessitated a 12-month leave of absence," but plaintiff also had previously submitted a physician's note stating that he had no work restrictions and requested additional work). The *McCoy* Court found that there was insufficient evidence to establish that Defendants had notice that Plaintiff suffered from a disability within the meaning of the ADA due to back injuries." *McCoy* at 10-11.

"An employer's awareness that a plaintiff suffered some injury does not establish that an employer had notice that the plaintiff was disabled." *McCoy* at 8 citing *Brown v. Connecticut, No. 08 Civ. 1478 (MRK), 2010 WL 2220580, at *17 (D. Conn. May 27, 2010)* ("[i]t is well established in the ADA context that an employer's knowledge of an employee's limitations or symptoms does not provide proof that the employer knew that the condition or symptoms were disabling"). An employer may reasonably rely on the opinion of a medical professional, such as a physician's statement declaring that a plaintiff may work without specifying any restrictions. See, e.g., *Rodriguez v. Atria Sr. Living Group, Inc.*, 887 F. Supp. 2d 503, 511-12 (S.D.N.Y. 2012) (employer did not have notice of disability when plaintiff's physician cleared him for work without the restrictions that the plaintiff requested); see also *Brown v. The Pension Bds., 488 F.*

*Supp. 2d 395, 406 (S.D.N.Y. 2007)* (employer lacked notice of disability when physician's note did not mention mental condition, notwithstanding the statement of plaintiff's mother that plaintiff was in a "breakdown condition"). *McCoy* at 9.

Like *McCoy*, Bourara cannot make out this essential element of his *prima facie* case. The undisputed evidence is that Bourara presented documentation to Defendant from his physician, Dr. Yadgarov, who cleared him for work without specifying any restrictions. Although Bourara alleges he was disabled at the time he returned to work in June 2015, he was cleared to return to work without specified restrictions, he was able to perform all of the duties of his job, he did not request any workplace accommodation and he had no physical signs of being disabled. None of his supervisors or administrators at the Queens Health Center were aware of Bourara's alleged disability or his medical condition. Bourara's alleged stray comments to Dr. Sweeting regarding his shoulder pain (which Sweeting denies) would not have put Sweeting on notice of a disability, particularly since he continued to perform all of his essential job functions and admittedly never asked for any accommodation. Sweeting's deposition testimony revealed that Bourara did not make any comments to her that would have led her to believe he was disabled. She further explained that she would not have seen his disability paperwork and was not aware of his injuries or why he was on a disability leave. She explained, "I was only given the paper saying he was cleared to come back to work." (Schmaltz Dec., Exh. B, Sweeting Tr. at 110, 160-161). Human Resources Director Torres confirmed that employee short term disability benefits documentation is "walled off to protect individual's privacy" and the Administrator Sarina Jean-Louis and Medial Director Dr. Sweeting would only receive the return to work clearance form (Schmaltz Dec., Exh. D, Torres Tr. at 58-59).

The decision in *Brown v. The Pension Bds., 488 F. Supp. 2d 395, 406 (S.D.N.Y. 2007)* also supports summary judgment in this case. In *Brown*, the Plaintiff did not present adequate

6

evidence that his employer was aware he had a mental condition that was a disability. The only contact made to his employer prior to its termination decision was a doctor's note, which made no mention of a mental condition, and the two brief telephone conversations with Plaintiff's sister and mother. Likewise, Bourara did not present adequate evidence that Defendant was aware of his medical condition and alleged disability. At the time he was terminated in August 2015, Dr. Bourara had been back to work at the Health Center for more than two months. The Funds clearly did not know of, and therefore could not consider, Bourara's alleged disability when he was terminated. As in the *Brown* case, Bourara fails to satisfy the fourth element of a *prima facie* case because, "At a minimum, for there to be causation, the employer must have knowledge of the disability." *Brown* at 20 citing *Barnett v. Revere Smelting Ref. Corp., 67 F. Supp. 2d 378, 392* (S.D.N.Y. 1999).

## II. DEFENDANT HAS ESTABLISHED BOURARA ENGAGED IN THEFT OF TIME AND NEGLECT OF HIS PATIENT DUTIES CONSTITUTING A LEGITIMATE REASON FOR HIS DISCHARGE

In *Brown,* the Court also found that even if Brown had established a *prima facie* case, he has failed to demonstrate that his employer's professed reason for the termination was pretextual. The Court granted summary judgment on his ADA claim noting that, "Plaintiff's actions provided a reasonable basis to terminate his employment . . . Plaintiff's behavior was simply conduct which an employer could legitimately determine was inappropriate and unacceptable in the workplace." *Brown* at 406 citing *Sista,* 2005 WL 356973 at *6, 2005 U.S. Dist. LEXIS 2163 at *19-*20. Likewise, in Bourara's case, theft of time by attending to his own personal medical appointments, while he admittedly had a schedule of patients waiting for him in the OB/GYN, constituted conduct which Defendant legitimately deemed was inappropriate and unacceptable in the workplace.

7

The Court in *Brown* concluded that, "Brown has not established that Boards knew he had a qualifying disability, that the disability was the reason for his discharge or even actions to show a prior bias by Boards against individuals with disabilities. The failure to call in during audit time constituted an abandonment of his obligations as Controller to the company. . . In short, Brown has failed to establish that a reasonable trier of fact could find that the termination was due to discrimination based on disability status." *Id.* at 407.

Dr. Jarvis testified during his deposition that Bourara engaged in theft of service and time and neglected his patient duties. Dr. Jarvis had no discussions with Bourara and was not aware of his alleged disability. With respect to the termination decision, Jarvis reviewed the facts presented to him regarding Bourara's conduct and approved the termination. That conduct is undisputed. Jarvis explained, "That's my decision. . . it has to be approved by me otherwise it's just a recommendation." (Schmaltz Dec., Exh. E, Jarvis Tr. at 73-75 and 84-85).

Bourara admits that he attended two personal, medical appointments on July 9, 2015. The first appointment was in the radiology department and second appointment was with his eendocrinologist, Dr. Abelev. (See Plaintiff's local rule 56.1 statement of material facts re: Defendant's motion for summary judgment statement at ¶¶ 30-36). In his deposition, Bourara specifically admitted to punching in and being on the clock and paid during this period of time. Bourara testified that on July 9, 2015, "*I waited for 7 to clock out because that's the time. I cannot punch out before hand.*" (See Bourara Tr. at 170 lines 15-18; Bourara Tr. 167-170 attached as Exh. A to the Schmaltz Dec.). Bourara also testified that at the time the Funds' were paying him $80 per hour. (Bourara Tr. at 26-28 in Exh. A to Schmalz Dec.). The concerted efforts of Bourara to minimize, downplay and trivialize the interruption that his personal appointments caused to his waiting patients does not alter the fact that he neglected his assigned

duties. As a result, the Funds legitimately terminated his employment based on his conduct and it is not required to tolerate theft of time or neglect of patient duties by a physician.

### III. CHIEF MEDICAL OFFICER DR. JARVIS TERMINATED BOURARA FOR LEGITIMATE, NONDISCRIMINATORY REASONS AND HAD NO KNOWLEDGE OF BOURARA'S ALLEGED DISABILITY

The Fund's well-established policy requires that termination recommendations such as the one made for Bourara must be reviewed and may be approved or denied by the Chief Medical Officer, Dr. Jarvis. (Schmaltz Dec., Exh. E, Jarvis Tr. at 84-85). Contrary to Plaintiff's contention, Dr. Jarvis did not just "rubber stamp" Bourara's termination. Jarvis explained that on July 10, 2015, he was advised via email from Dr. Sweeting of the misconduct of Bourara and he agreed with the decision to terminate. (Jarvis Tr. at 84-85, See Exhs. K and M to Schmalz Dec.). Dr. Bourara admitted that he had not even spoken to Dr. Jarvis during the period following his return to work. With no knowledge of his alleged disability, Dr. Jarvis could not have been motivated by unlawful disability discrimination. See *Tibbets v Pelham Union Free School Dist.*, 143 AD3 806 (2d Dept 2016) [defendant met burden by showing it terminated plaintiff's employment due to complaints about plaintiff] and *Brown v The Pension Bds.*, 488 F Supp 2d 395, 406 (SDNY 2007) (See also *Raytheon Co. v Hernandez*, 540 US 44, 54 n 7 [2003]; *Volmar v Cold Spring Hills Ctr. for Nursing & Rehabilitation*, 395 Fed Appx 795, 796 (2d Cir 2010); *Barnett v Revere Smelting & Ref Corp.*, 67 F Supp 2d 378, 392 (SDNY 1999).

Bourara also mistakenly relies upon the "Cat's Paw" theory of liability, although that theory does not apply to the facts in this case. The Second Circuit in *Vasquez v. Empress Ambulance Serv., Inc.*, extended the theory to retaliation cases under Title VII, not the ADA. *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267 (2d Cir. 2016). Notably, Bourara did not assert a claim of retaliation in his Complaint. Even if the theory is applied here in the ADA context, it must be rejected for the same reasons set forth in *Jones v. Target Corp.*, 15-CV-4672

(MKB) (LB) (E.D.N.Y. Mar. 16, 2018). In *Jones*, the Court explained that, "an employer may be held liable for unlawful retaliation because of an "employee who 'manipulates' an employer into acting as mere 'conduit' for his retaliatory intent." *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 273 (2d Cir. 2016). In sanctioning Cat's Paw liability, the Second Circuit, "emphasize[d] that such an approach should not be construed as holding an employer 'liable simply because it acts on information provided by a biased co-worker.'" *Id.* at 275 (quoting *Vasquez v. Empress Ambulance Serv., Inc.*, No. 14 CV-8387, 2015 WL 5037055, at *6 (S.D.N.Y. Aug. 26, 2015)). The Second Circuit further cautioned that, "Only when an employer in effect adopts an employee's unlawful animus by acting *negligently* with respect to the information provided by the employee, and thereby affords that biased employee an outsize role in its own employment decision, can the employee's motivation be imputed to the employer and used to support a claim under Title VII." *Id.*

In *Jones*, the Plaintiff failed to provide evidence that the decision makers "blindly credited" any assertions from her coworker or otherwise acted negligently in a way that gave the coworker an "outsize role" in the decision to terminate her employment. *Id.* at 275. In the absence of any such evidence, the Court held that Plaintiff's retaliation claim could not withstand summary judgment. *Id.* at 276-77; *see also Prophete-Camille v. Stericycle, Inc.*, No. 14-CV-7268, 2017 WL 570769, at *14 (E.D.N.Y. Feb. 13, 2017) ("Even assuming, *arguendo*, that [the] request for [p]laintiff's removal was based on biased information provided by [the biased employee], the record does not contain any facts that would indicate [that the employer's decisionmakers] acted negligently in terminating [p]laintiff . . . . ." (citing *Vasquez*, 835 F.3d at 275). There is no evidence (or allegation) in the instant case that Dr. Jarvis acted negligently in his decision making related to Bourara's termination or that he relied upon any discriminatory animus.

**CONCLUSION**

For all of the reasons set forth herein and in Defendant's principal memorandum of law, Defendant respectfully requests that this Court grant Defendant's motion for summary judgment dismissing Plaintiff's claims in their entirety and award Defendant reasonable attorneys' fees and such other and further relief as this Court deems just, proper and equitable.

Dated: December 6, 2019　　　　　　　　　　　　Respectfully submitted,
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　**KANE KESSLER P.C.**

　　　　　　　　　　　　　　　　　　　　　　　　By: /s/ S. Reid Kahn
　　　　　　　　　　　　　　　　　　　　　　　　　　 S. Reid Kahn, Esq.
　　　　　　　　　　　　　　　　　　　　　　　　　　 Jennifer M. Schmalz, Esq.
　　　　　　　　　　　　　　　　　　　　　　　　666 Third Avenue, 23rd Floor
　　　　　　　　　　　　　　　　　　　　　　　　New York, New York 10017
　　　　　　　　　　　　　　　　　　　　　　　　(212) 519-5129
　　　　　　　　　　　　　　　　　　　　　　　　*rkahn@kanekessler.com*