UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOUSTAPHA BOURARA,<br><br>                    Plaintiff,<br><br>          -against-<br><br>THE NEW YORK HOTEL TRADES COUNCIL<br>& HOTEL ASSOCIATION OF NEW YORK<br>CITY, INC. EMPLOYEE BENEFIT FUNDS,<br><br>                    Defendant. | 17cv7895 (DF)<br><br>**MEMORANDUM<br>AND ORDER** |

In this disability discrimination case, which is before this Court on consent pursuant to

28 U.S.C. § 636(c), plaintiff Moustapha Bourara ("Plaintiff") has asserted claims against

defendant The New York Trades Council & Hotel Association of New York City, Inc. Employee

Benefit Funds ("Defendant"), under the Americans with Disabilities Act, 42 U.S.C. § 12101

*et seq.* (the "ADA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (the

"NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*

(the "NYCHRL").  Plaintiff contends that Defendant terminated his employment because of his

alleged disability.  Currently before this Court is a motion by Defendant for summary judgment

(Dkt. 52), seeking dismissal of Plaintiff's claims, in their entirety.  For the reasons discussed

below, Defendant's motion is granted.

# BACKGROUND

## A.      Factual Background

The following facts, when viewed in the light most favorable to Plaintiff, are relevant to Defendant's motion.  Unless otherwise noted, the facts are undisputed:[1]

Plaintiff was employed by Defendant from January 26, 2010 to August 10, 2015, as a part-time physician specializing in Obstetrics and Gynecology at Queens Health Center ("QHC"), one of Defendant's four Health Centers in New York City.  (Def. & Pl. Rule 56.1 Stmts. ¶¶ 1, 7, 9-10.)  Plaintiff reported to Dr. Doreen Sweeting, Medical Director for QHC, from December 2014 until the termination of his employment in August 2015.  (Def. & Pl. 56.1 Stmts. ¶¶ 6-7.)  At all times relevant to this motion, Dr. Vincent Jarvis was the Chief Medical Officer for Defendant.  (*See* Def. & Pl. 56.1 Stmts. ¶ 3.)

There is some evidence in the record of issues regarding Plaintiff's job performance for the period prior to the onset of his claimed disability in May of 2015.  Specifically, in March of that year, after Plaintiff declined to see a patient, he admits that Dr. Sweeting told him, "You need to see the patients that we want you to see, that we put on your schedule."  (Def. & Pl. 56.1 Stmts. ¶ 28.)  In addition, Defendant asserts that, at some point, Plaintiff "denigrated" another doctor in front of patients, although Plaintiff disputes this.  (*Id.* ¶ 29.)

---

[1] The facts summarized herein are primarily drawn from the parties' statements pursuant to Local Civil Rule 56.1, and the evidence referenced therein.  (*See* Defendants' [sic] Local Rule 56.1 Statement of Material Facts, dated Oct. 24, 2019 ("Def. 56.1 Stmt.") (Dkt. 55); Plaintiff's Local Rule 56.1 Statement of Material Facts Re:  Defendant's Motion for Summary Judgment, dated Nov. 14, 2019 ("Pl. 56.1 Stmt.") (Dkt. 58).)  For ease of reference, where Plaintiff admits to an assertion in Defendant's Rule 56.1 Statement, the Court will cite to "Def. & Pl. 56.1 Stmts." and the two Statements' common paragraph number, as opposed to citing the two Statements separately.  Where the parties' Rule 56.1 Statements suggest that the relevant facts are in dispute, the Court will note that.  To the extent the purportedly disputed facts may be material, the Court has consulted the record and considered the parties' cited evidence.

1.       **Plaintiff's Claimed Disability**

On May 12, 2015, while working at New York Presbyterian Queens Hospital in the labor and delivery area, Plaintiff slipped on a waxed floor and sustained bodily injuries.  (Def. & Pl. 56.1 Stmts. ¶ 14.)  Subsequently, Plaintiff and his physician completed paperwork for a short-term disability claim and submitted the paperwork to Defendant's Human Resources department and short-term disability insurance carrier.  (Def. & Pl. 56.1 Stmts. ¶ 15.)  Plaintiff requested and was granted sick leave between May 12, 2015 and May 17, 2015, and requested and was granted a short-term disability leave from May 18, 2015 through May 31, 2015.  (Def. & Pl. 56.1 Stmts. ¶ 17.)

By letter dated May 20, 2015, Plaintiff's physician cleared Plaintiff to return to work on May 31, 2015, (Def. & Pl. 56.1 Stmts. ¶ 18), without specifying any restrictions or limitations. (*See* Declaration of Jennifer M. Schmalz, Esq. in Support of Defendant's Motion for Summary Judgment, dated Oct. 24, 2019 ("Schmalz Decl.") (Dkt. 53), Ex. G.)[2]  After submitting this physician's letter to QHC, Plaintiff told the Health Center Administrator's office to "put him on the schedule."  (*See* Def. & Pl. 56.1 Stmts. ¶ 20.)  Plaintiff was then scheduled to start working on Monday, June 1, 2015.  (Def. & Pl. 56.1 Stmts. ¶ 21.)

2.       **Plaintiff's Return to Work and Continuing Medical Treatment**

Although at no point prior to June 1, 2015 did Plaintiff notify Defendant that he would not be reporting to work that day (Def. & Pl. 56.1 Stmts. ¶ 25), he did not arrive to work on June 1 as scheduled (*see* Def. & Pl. 56.1 Stmts. ¶ 22).  When he did not arrive, Plaintiff was contacted by a Yobanka Alamonte, a Human Resources Generalist, and Plaintiff apparently told

_____

[2] Although Plaintiff purports to dispute that this medical clearance was "with no restrictions" (Pl. 56.1 Stmt. ¶ 18), it is indisputable that the letter from Plaintiff's physician did not itself specify any restrictions (*see* Schmalz Decl., Ex. G).

her that he wanted to take the day off, as a "sick day."  (*See* Def. 56.1 Stmt. ¶ 23 (stating that

Plaintiff "advised Ms. Alamonte that he was taking a sick day"); Pl. 56.1 Stmt. ¶ 23 (stating that

Plaintiff "requested and was granted permission to take a sick day").)  Plaintiff asserts that he

also contacted Dr. Sweeting, on that same day, and informed her "that he could not work that day

because he was still in severe pain and could not move his right arm."  (Pl. 56.1 Stmt. ¶ 23.)

Plaintiff eventually returned to work on June 4, 2015.  (*See* Def. & Pl. 56.1 Stmts. ¶ 26.)

Plaintiff concedes that, at no point thereafter, did he request any sort of disability-related

accommodation from Defendant, or submit written documentation requesting an accommodation

or otherwise indicating that he was disabled.  (*See* Def. & Pl. 56.1 Stmts. ¶¶ 27, 59.)

Plaintiff received ongoing treatment for his injuries after his return to work.[3]

Specifically, on May 26, 2015, Plaintiff was examined by Dr. Justin Classie, who diagnosed

Plaintiff with rib contusions and instructed him to avoid heavy lifting, sudden movements and

aggravating activities.  (Pl. 56.1 Stmt. ¶¶ 67-69.)  Plaintiff then received a PET/CT scan on

June 29, 2015 which confirmed that Plaintiff had suffered nine non-displaced right rib fractures.

(*See* Pl. 56.1 Stmt. ¶ 71.)  On July 6, 2015, Plaintiff saw William King, M.D., an orthopedist at

QHC, who found that Plaintiff had "suffered multiple rib fractures as a result of his fall, that his

ribs were tender, and that there were signs of impingement involving his right shoulder."  (*See*

Pl. 56.1 Stmt. ¶¶ 73-74.)  On July 9, 2015, Plaintiff had an X-ray of his right shoulder in the

---

[3] In his responsive Rule 56.1 Statement, Plaintiff adds a number of facts related to his alleged injury and subsequent treatment, describing them as "additional material facts as to which there exist genuine issues for trial."  (Pl. 56.1 Stmt; see Local Rule 56.1(b).)  For purposes of its motion, however, Defendant does not contest that Plaintiff was disabled (*see generally* Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, dated Oct. 24, 2019 ("Def. Mem.") (Dkt. 54)), and also does not appear to dispute that Plaintiff received treatment.  Thus, the Court disagrees that Plaintiff's additional asserted facts on these issues are "material" at this stage – or, indeed that they are even "disputed" for purposes of Defendant's motion – and references them here only for context.

Radiology Department of QHC.  (*See* Pl. 56.1 Stmt. ¶ 77.)  Plaintiff then followed up with

Dr. King on July 20, 2015 and was diagnosed with "pain in limb" that was "worsening."  (*See* Pl.

56.1 Stmt. ¶ 102.)  On July 28, 2015, Plaintiff saw Emmanuel Hostin, M.D., another orthopedist,

upon referral from Dr. King.  (*See* Pl. 56.1 Stmt. ¶¶ 103-104.)  Dr. Hostin's report stated that

Plaintiff had suffered a right shoulder injury and multiple rib fractures due to his fall, resulting in

ongoing pain in his right shoulder.  (*See* Pl. 56.1 Stmt. ¶ 105.)  Dr. Hostin ordered an MRI of

Plaintiff's right shoulder, which confirmed partial-thickness rotator cuff tears in the right

shoulder.  (*See* Pl. 56.1 Stmt. ¶¶ 106-107.)

### 3.  **Plaintiff's Statements to Dr. Sweeting Regarding His Disability**

Plaintiff concedes that Dr. Jarvis was unaware of Plaintiff's alleged disability.  (Def. &

Pl. 56.1 Stmts. ¶ 46.)  The parties, however, dispute whether Dr. Sweeting was similarly unaware

of it.  On this issue, Defendant cites to Dr. Sweeting's deposition testimony to support the

proposition that she "had no knowledge of [Plaintiff's] medical condition or alleged disability."

(Def. 56.1 Stmt. ¶ 50 (citing Schmalz Decl., Ex. B (excerpts of transcript of deposition of Doreen

Sweeting, MD, conducted Aug. 1, 2018) (Dkt. 43-2), at 112).)  Plaintiff, on the other hand,

asserts that, following his return to work, he made several statements to Dr. Sweeting, on

multiple occasions, regarding his physical condition and the difficulties that it was posing to his

ability to work.  (*See* Pl. 56.1 Stmt. ¶ 50.)

Specifically, Plaintiff contends that he told Dr. Sweeting on June 1, 2015 "that he could

not work that day because he was having severe pain and was unable to move his right arm," and

that he informed Dr. Sweeting on at least three occasions after his return to work "that he could

not use his right arm, that he was walking in an awkward manner, that he had to use his left arm

to move his right arm, and that he was having a lot of pain." (*Id.*)  Plaintiff additionally contends

that he told Dr. Sweeting "that he was having difficulty performing physical examinations of his patients because he could not move his right arm, and that he was doing his best to complete the exams despite his limitations." (*Id.*) Plaintiff further asserts that he informed Dr. Sweeting of his ongoing treatment with doctors at QHC. (*See id.* ¶ 72.) In particular, he states that he told Dr. Sweeting that his August 3, 2015 MRI revealed "multiple tears of [his] rotator cuff," which "explain[ed] why [he] c[ould]n't move [his] arm." (*See id.* ¶ 109; *see also* Declaration of Sidney L. Gold, Esq., in Opposition to Defendant's Motion for Summary Judgment, dated Nov. 14, 2019 ("Gold Decl.") (Dkt. 57), Ex. A (excerpts of transcript of deposition of Plaintiff, conducted July 31, 2018), at 181:20-24.)

Plaintiff also asserts that, when he informed Sweeting via telephone that he would not be returning to work on June 1, 2015, she responded "I don't care" and "this is not my problem." (Pl. 56.1 Stmt. ¶ 70.)

### 4.   Allegations of Misconduct by Plaintiff After His Return to Work

As noted above, it is undisputed that Plaintiff had a shoulder X-ray on July 9, 2015. (*See* Def. & Pl. 56.1 Stmts. ¶ 31.) It is further undisputed that, on that same day, Plaintiff also separately saw an endocrinologist, Dr. Zinoviy Abelev, M.D., for a different medical issue, involving his thyroid. (*See* Def. & Pl. 56.1 Stmts. ¶ 32; *see also* Pl. 56.1 Stmt. ¶ 41.) Plaintiff went to both of these two medical appointments during his scheduled work hours, "while he was clocked in, on duty and being paid by [Defendant] to perform OB/GYN services." (Def. 56.1 Stmt. ¶ 30 (citing Schmalz Decl., Ex. A (excerpts of transcript of deposition of Plaintiff, conducted July 31, 2018) (Dkt. 43-1), at 159-61 (Plaintiff admitting that he had an X-ray at

4:00 p.m. on July 9)); *see also* Schmalz Decl., Ex. A, at 170 (Plaintiff testifying that, on July 9,

2015, he "waited for 7 to clock out because that's the time.  I cannot clock out before.").)[4]

     In any event, upon Plaintiff's return to his own work location, Dr. Sweeting confronted

Plaintiff, telling him, "You cannot see doctors for your own problems when you have other

patients scheduled to be seen by you."  (*See* Def. & Pl. 56.1 Stmts. ¶ 41.)  Plaintiff responded,

"Dr. Sweeting, yes."  (*Id.*)  Plaintiff also states that he then explained to Dr. Sweeting that his

appointment with Dr. Abelev had lasted only a few minutes and had caused no disruption in

Plaintiff's own patient schedule, and that the appointment had been urgent because Plaintiff had

been concerned that a thyroid nodule may have been malignant.  (Pl. 56.1 Stmt. ¶ 41.)  Plaintiff

disputes that any patients were waiting for him when he left his office for his X-ray appointment

or when he had his appointment with Dr. Abelev.  (*See* Pl. 56.1 Stmt. ¶¶ 39, 41.)

     **5.**    <u>**Plaintiff's Termination**</u>

     On July 10, 2015, Dr. Sweeting wrote an email to Dr. Jarvis, informing him that "[we

are] having ongoing problems with [Plaintiff]," and recommending that his employment be

terminated.  (Schmalz Decl., Ex. K (the "July 10 Email").)  Dr. Sweeting noted in the July 10

Email that, the previous evening, Plaintiff had "kept patients waiting while he addressed his

personal medical needs."  (*Id.*)  Dr. Sweeting more specifically stated that she had "found [five]

patients waiting in the GYN, three of whom where [sic] already triaged and waiting in exam

rooms, while [Plaintiff] was seeing the endocrinologist," and that, "[a]s a result, the center closed

_____

    [4] While Plaintiff purports to dispute these facts on the grounds that the pages cited by
Defendant do not reflect specific testimony by Plaintiff that he was clocked in and being paid
(*see* Pl. 56.1 Stmt. ¶ 30), Plaintiff's testimony does in fact suggest that he attended these
appointments while clocked in, and Plaintiff has pointed to no evidence capable of raising a
genuine dispute on this point.  The Court will therefore accept this fact as undisputed for
purposes of the instant motion.

at 8:45," holding up the departure of the driver of "[l]aboratory collection and specimens from

GYN" and "impact[ing] security OT and the departure of the covering administrator."  (*Id.*)

Dr. Sweeting also noted prior instances of alleged misconduct by Plaintiff, stating, "we have

already addressed an incident where he refused to see a patient, an incident where he denigrated

another doctor in front of patients and that doctor[,] and we have instructed him not to give the

staff gifts."  (*Id.*)  After Dr. Sweeting expressed her opinion that Plaintiff should be terminated

(*id.*), Dr. Jarvis responded, "agreed" (*id.*).

Dr. Sweeting then prepared a follow-up memorandum recommending Plaintiff's

termination, which she provided to Dr. Jarvis on August 10, 2015.  (*See* Def. & Pl. 56.1 Stmts.

¶¶ 48-49; Schmalz Decl., Ex. M (the "August 10 Memorandum").)  In the August 10

Memorandum, Dr. Sweeting again listed various instances of alleged misconduct by Plaintiff,

but added two events not referenced in the earlier email:  (1) that Plaintiff had not reported to

work as scheduled on June 1, 2015; and (2) that, subsequent to the July 10 Email, Plaintiff had

informed Dr. Sweeting that he needed to see a doctor in the middle of his shift without

requesting the time off, in writing, in advance.  (Schmalz Decl., Ex. M.)  Dr. Sweeting again

recommended that Plaintiff's employment be terminated.  (*Id.*)

The August 10 Memorandum included a signature line for the Chief Medical Officer's

approval of the recommended termination, and Dr. Jarvis signed the memorandum where

indicated, thereby terminating Plaintiff's employment effective August 10, 2015.  (*Id.; see* Def.

& Pl. 56.1 Stmts. ¶ 51.)  Plaintiff's termination was communicated to him at a meeting that same

day, attended by Plaintiff, Dr. Sweeting, Sarina Jean-Louis (Administrator for QHC), and

Bill Torres (Director of Human Resources).  (*See* Def. & Pl. 56.1 Stmts. ¶ 53.)

B.     **Procedural History**

Plaintiff commenced this action by filing his Complaint on October 13, 2017.  (Dkt. 1.)

He filed an Amended Complaint on August 9, 2018.  (Dkt. 27.)

On December 14, 2018, following discovery, Defendant attempted to file its motion for

summary judgment (*see* Dkt. 36), but, due to a filing error, the motion was rejected.  Defendant

then refiled the motion on January 10, 2019 (Dkt. 40).  After the motion was fully briefed, the

Court reviewed both parties' submissions and issued an Order denying the motion without

prejudice to renew.  (Dkt. 49.)  Specifically, the Court noted (1) that neither party had properly

authenticated its submitted exhibits through a sworn affidavit or declaration made under penalty

of perjury, and that this defect should be remedied in any renewed motion, and (2) that, since the

time of the parties' briefing, the Second Circuit had determined that a "but-for" standard of

causation should be applied to ADA claims (as opposed to the "mixed-motive" causation

standard that the parties to this case had assumed should apply to Plaintiff's claims), and that any

renewed motion should also address the evidence in light of the correct legal standard.  (*See id*.)

Defendant filed a renewed motion on October 24, 2019.  (*See* Def. Mem.; Def. 56.1

Stmt.; Schmalz Decl.)  In its memorandum, Defendant now argues (1) that Plaintiff cannot

establish that Defendant knew of his alleged disability; and (2) that Defendant had a legitimate,

non-discriminatory reason to terminate Plaintiff's employment based on Plaintiff's "theft of

[company] time," a reason that Plaintiff cannot establish was a pretext for discrimination.  (*See

generally* Def. Mem.)

Plaintiff filed an opposition to Defendant's motion on November 14, 2019.  (Plaintiff's

Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated

Nov. 14, 2019 ("Pl. Mem.") (Dkt. 56); Pl. 56.1 Stmt.; Gold Decl.)  In his opposition

memorandum, Plaintiff argues that summary judgment should be denied based on evidence tending to show that (1) Dr. Sweeting, who recommended the termination of Plaintiff's employment to Dr. Jarvis, knew of his alleged disability; (2) even if the termination decision was ultimately made by Dr. Jarvis, who lacked personal knowledge of Plaintiff's disability, Dr. Sweeting used Dr. Jarvis as a "cat's paw" to discriminate against Plaintiff due to his disability; and (3) Defendant's stated reason for Plaintiff's termination was pretextual.  (*See generally* Pl. Mem.)

Defendant filed a reply memorandum on December 6, 2019 (Def. Reply Mem. (Dkt. 59)), mainly reiterating its initial arguments that it was not aware of Plaintiff's alleged disability and that Plaintiff's alleged theft of company time was a legitimate, non-discriminatory reason for his discharge.  (*See generally id.*)

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

### A.   Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  This burden may be satisfied "by pointing out the absence of evidence to support the non-movant's claims." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991) (citing *Celotex*, 477 U.S. at 325).

Once the movant meets this burden, the non-moving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322-23).  Specifically, the non-moving party must cite to "particular parts of materials in the record" or show "that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute" as to any material fact.  Fed. R. Civ. P. 56(c)(1).  The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation," *Scott v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).  Rather, a party opposing summary judgment "must lay bare [its] proof in evidentiary form and raise an issue of fact sufficient to send to the jury." *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 408 (S.D.N.Y. 2003) (internal quotation marks and citations omitted); *see Smith v. Menifee*, No. 00cv2521 (DC), 2002 WL 461514, at *3 (S.D.N.Y. Mar. 25, 2002) (holding that the non-moving party must present "significant probative evidence" tending to support its claims (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968))).

In reviewing the evidentiary record, the court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his [or her] favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001).  If, even when viewed in this light, there is not "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

party," or if the "evidence is not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

**B.**     **Discrimination Claims Under the ADA**

"Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *McMillian v. City of New York*, 711 F.3d 12, 125 (2d Cir. 2013) (citing *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)).  This analysis requires that:  "[a] plaintiff must establish a *prima facie* case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge [or other form of discriminatory action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext."  *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (citing *Heyman v. Queens Vill. Comm. For Mental Health for Jamaica Cmty, Adolescent Program*, 198 F.3d 68, 72 (2d Cir. 1999)).

For a plaintiff to establish a *prima facie* claim under the ADA based on an adverse employment action, the plaintiff must demonstrate by a preponderance of the evidence that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability."  *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869-70 (2d Cir. 1998) (citations omitted); *Hernandez v. City of New York,* No. 11cv6644 (KPF) (DF), 2015 WL 321830, at *17 (S.D.N.Y. Jan. 23, 2015.)  While the *prima facie* burden "is not a heavy one . . .[,] it does require

evidence that allows for a reasonable inference of discrimination." *McDonnell v. Schindler Elevator Corp.*, 618 F. App'x 697, 698 (2d Cir. 2015) (summary order).

### C.  Discrimination Claims under the NYSHRL and NYCHRL

Both the NYSHRL and NYCHRL also prohibit discriminatory conduct. *See* N.Y. Exec. Law § 296.3-a; N.Y. City Admin. Code § 8-107(1)(a); *see also Colon v. Trump Int'l Hotel & Tower*, No. 10cv4794 (JGK), 2011 WL 6092299, at *4 (S.D.N.Y. Dec. 7, 2011).  As a general matter, disability discrimination claims brought pursuant to the NYSHRL and NYCHRL are subject to the same burden-shifting analysis as claims under the ADA. *Pena-Barrero v. City of New York*, No. 14cv9550 (VEC), 2017 WL 1194477, at *15 (S.D.N.Y. Mar. 30, 2017), *aff'd*, 726 F. App'x 31 (2d Cir. 2018).

## II.  DEFENDANT'S MOTION

### A.  Plaintiff's ADA Claim

As set out above, to make out a *prima facie* case of disability discrimination under the ADA, a plaintiff must be able to demonstrate that (1) his employer is subject to the ADA; (2) he was disabled under the statute; (3) he was otherwise qualified to perform his job; and (4) he suffered an adverse employment action because of his disability.  (*See* Discussion, *supra*, at Section I(B).)  Assuming the plaintiff can make out a *prima facie* case, the defendant must then come forward with evidence that the adverse employment action was taken for a legitimate, non-discriminatory reason, which – in order to prevail – the plaintiff must show was a pretext for discrimination, and that discrimination was a but-for reason for the adverse action.  (*See id.*)

Here, Defendant argues that it is entitled to summary judgment on Plaintiff's ADA claim because, based on the evidentiary record, Plaintiff cannot make out a *prima facie* case of discrimination, and, even if he could, he cannot demonstrate that Defendant's proffered non-

discriminatory reason for his termination was pretextual.  While the Court finds that the evidence

may be sufficient to support Plaintiff's ADA claim at the "*prima facie*" level, it agrees with

Defendant that, ultimately, Plaintiff has not shown that the record contains evidence capable of

giving rise to an inference that the but-for cause of his firing was Dr. Sweeting's discriminatory

animus.

### 1.     Defendant's Challenge to Plaintiff's *Prima Facie* Case of Disability Discrimination

With respect to the question of whether Plaintiff can establish a *prima facie* case of

disability discrimination, Defendant does not appear to challenge Plaintiff's ability to show,

based on the evidence, that the ADA applies to this case (the first *prima facie* element), that

Plaintiff was disabled (the second element),[5] or that Plaintiff was qualified to perform his job

(the third element).  (*See generally* Def. Mem.)  Defendant does argue, however, that the

evidence of record is insufficient to enable Plaintiff to show the fourth element, *i.e.*, that his

employment was terminated *because of* disability discrimination.  (*Id.,* at 14-15.)

In its moving brief, Defendant contends that Plaintiff cannot establish this element

because Plaintiff has not adduced proof that Defendant had "notice" of Plaintiff's disability.

(Def. Mem., at 15 (citing cases in which courts dismissed claims at the *prima facie* stage for lack

of evidence that the employer had been made aware of the plaintiff's claimed disability).)  More

specifically, Defendant contends that Dr. Jarvis was the sole decision-maker regarding Plaintiff's

termination and that it is undisputed that he was unaware of Plaintiff's disability, precluding a

finding that Plaintiff's employment was terminated because of his disability.  (Def. Mem., at

13-14.)

---

[5] (*See* Def. Mem., at 14 ("Assuming for purposes of this motion that [Plaintiff] was in fact disabled under the law . . . .").)

In opposition, Plaintiff concedes that Dr. Jarvis was not aware of his disability, but contends that Dr. Sweeting – who made the recommendation to Dr. Jarvis that Plaintiff be fired – *was* aware of his disability, based on several comments that Plaintiff alleges he personally made to her.  (Pl. Mem., at 18-19, 22.)  Plaintiff further argues that Dr. Sweeting effectively used Dr. Jarvis as a "cat's paw" to implement her own discriminatory termination decision.  (*Id.*, at 22-24.)  In reply, Defendant asserts that Plaintiff's purported comments to Dr. Sweeting "would not have put [her] on notice of a disability, particularly since [Plaintiff] continued to perform all of his essential job functions and admittedly never asked for any accommodation." (Def. Reply Mem., at 6.)  Defendant also argues that, even if Dr. Sweeting was aware of Plaintiff's disability, Plaintiff's claim must fail because Dr. Jarvis did not negligently adopt Dr. Sweeting's recommendation, and therefore any improper motivation on Dr. Sweeting's part cannot be imputed to Dr. Jarvis.  (*Id.*, at 9-10.)  Defendant also appears to suggest, albeit in a conclusory fashion, that the "Cat's Paw" theory of liability is inapplicable to claims under the ADA.  (*Id.*)

As the parties do not dispute that Dr. Jarvis was unaware of Plaintiff's disability (Def. & Pl. 56.1 Stmts. ¶ 46), the Court will consider the question of whether Plaintiff has made an adequate *prima facie* showing that Dr. Sweeting had notice of Plaintiff's disability, such that any animus on her part could be imputed to Dr. Jarvis under a "Cat's Paw" theory.

### a.     "Cat's Paw" Liability

Under the Cat's Paw theory of liability, an employer may be held liable for decisions which, though made by a non-biased decision-maker, negligently relied on the accusations or determinations of a biased decision-maker.  *See Vasquez v. Empress Ambulance Serv., Inc.,* 835 F.3d 267 (2d Cir. 2016); *Holcomb v. Iona Coll.,* 521 F.3d at 130, 143 (2d Cir. 2008).  Plaintiff

15

argues that, under this theory, his claim may succeed even though Dr. Jarvis did not know about his alleged disability, because Dr. Jarvis relied solely on the recommendation of Dr. Sweeting to terminate Plaintiff's employment, and (according to Plaintiff) Dr. Sweeting *did* know of his disability and was motivated by discriminatory animus in recommending termination.  (Pl. Mem., at 22-23.)

Defendant argues that Cat's Paw liability cannot apply in this case because the Second Circuit's decision in *Vasquez*, in addressing that theory of liability, did not expressly extend the theory to discrimination claims under the ADA.  (Def. Reply Mem., at 9.)  On the flip side, though, the Court notes that neither *Vasquez* nor Defendant provide any authority expressly *excluding* the application of the Cat's Paw theory to ADA discrimination cases (*see id.; see also Vasquez,* 835 F.3d at 274), and further notes that, subsequent to *Vasquez*, courts in this District proceeded to apply the Cat's Paw theory to such cases, *see Rotger v. Montefiore Med. Ctr.,* No. 15cv7783 (GHW), 2019 WL 1429556, at *1 (S.D.N.Y. Mar. 29, 2019); *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 488 (S.D.N.Y. 2017).

Most recently, in *Natofsky v. City of N.Y.,* 921 F.3d 337 (2d Cir. 2019), after concluding that the "but-for" standard of causation applies to claims under the ADA, the Second Circuit declined to decide whether a Cat's Paw theory could remain viable in that context, leaving it an open question:

> The Supreme Court and this Circuit had permitted plaintiffs to use a Cat's Paw theory of liability in anti-discrimination statutes requiring the more lenient mixed-motive standard.  Neither the Supreme Court nor this Circuit, however, has addressed whether the same theory would apply to statutes requiring plaintiffs to demonstrate that discriminatory intent was the but-for cause of an adverse employment action.  […]  While the question of whether Cat's Paw liability applies outside of the mixed-motive context is an important one, we decline to decide it now.

16

*Id.* at 350-51 (internal citations omitted).  As the defendants in *Natofsky* had not argued against the application of Cat's Paw liability, the Second Circuit simply assumed, without deciding, that the theory would apply.  *See id.* at 351.

Unlike the defendants in *Natofsky,* Defendant here has argued, albeit in a wholly conclusory way, against the application of a Cat's Paw theory of liability.  (Def. Reply Mem. at 9-10).  As in *Natofsky,* however, this Court need not reach the issue in order to resolve Defendant's motion.  Even assuming, without deciding, that Plaintiff can proceed with his ADA claim on a Cat's Paw theory, the Court concludes for the reasons discussed below that – as in *Natofsky* – Defendant is entitled to judgment in its favor, as Plaintiff has "failed to present . . . evidence from which a reasonable factfinder could conclude that, but for his [disability]," he would not have been terminated.  *Natofsky,* 921 F.3d at 351.

### b.   Whether Dr. Sweeting Had <u>Notice of Plaintiff's Claimed Disability</u>

Plaintiff points to several statements that he claims to have made to Dr. Sweeting that, he asserts, were sufficient to have placed Dr. Sweeting on notice of his disability.  First, Plaintiff contends that, on June 1, 2015, he spoke with Dr. Sweeting and told her that he would not be reporting to work "because he was having severe pain and was unable to move his right arm." (Pl. 56.1 Stmt. ¶ 50 (citing Gold Decl., Ex. A, at 43-44, 93, 95, 194-195).)  Second, he contends that, "[o]n at least three occasions after he returned to work from his disability leave," he told Dr. Sweeting "that he could not use his right arm, that he was walking in an awkward manner, that he had to use his left arm to move his right arm, and that he was having a lot of pain."  (*Id.* (citing Gold Decl., Ex. T, at ¶ 11; *Id.,* Ex. A, at 84, 113-114, 240).)  Third, he contends that he told Dr. Sweeting "that he was having difficulty performing physical examinations of his patients because he could not move his right arm, and that he was doing his best to complete the exams

17

despite his limitations." (*Id.* (citing Gold Decl., Ex. A, at 37-39, 91-93).)  Finally, Plaintiff

contends that, after receiving an MRI report on August 3 or 4, 2015, he informed Dr. Sweeting

that the MRI showed "multiple tears of [his] rotator cuff," which "explain[ed] why [Plaintiff]

[could not] move [his] arm." (*Id.* (citing Gold Decl., Ex. A, at 181, 248-249).)  Defendant notes

that Dr. Sweeting denies that Plaintiff ever made any of these statements to her (Def. Reply

Mem., at 6), but also argues that, in any event, the alleged statements would, at most, have been

in the nature of "stray remarks" that could not have given Dr. Sweeting notice that Plaintiff was

disabled (*see id.*).

Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable

inferences in his favor, *L.B. Foster*, 138 F.3d at 87, the Court cannot assume that Plaintiff's

testimony is less credible Dr. Sweeting's, and therefore assumes that Plaintiff may be able to

show at trial that he did, in fact, make the alleged comments to Dr. Sweeting, *see Rivera v.*

*Target Dep't Store, Inc.*, No. 15cv7846 (HBP), 2017 WL 2709745, at *3 (S.D.N.Y. June 22,

2017) ("It is a settled rule that credibility assessments, choices between conflicting versions of

the events, and the weighing of evidence are matters for the jury, not for the court on a motion

for summary judgment." (citation omitted)).  Further, Defendant cites to no authority for the

proposition that, as a matter of law, "stray remarks" by an employee cannot put an employer on

notice of a disability.  Although Defendant cites *McCoy* for the proposition that an employer's

mere "awareness that a plaintiff suffered some injury does not establish that an employer had

notice that the plaintiff was disabled," *McCoy*, 2014 WL 737364 at *4 (cited in Def. Reply

Mem., at 5), the question of whether an employer has been made aware of an employee's

disability can be fact-intensive and case-specific, and, in some cases, obvious physical problems

and informal statements may suffice, *see Lyman v. The N.Y. and Presbyterian Hospital, et al.,*

No. 11cv3889 (KPF), 2014 WL 3417394 at *11 (S.D.N.Y. Jul. 14, 2014) (finding a dispute of material fact regarding whether Defendants had notice of Plaintiff's disability where "Plaintiff insists that her limp and pain were obvious to all . . . and that she told her supervisor [ ] on multiple occasions that she would need to seek medical leave to address her problem").

Moreover, while Defendant points out that "[a]n employer may reasonably rely on the opinion of a medical professional, such as a physician's statement declaring that a plaintiff may work without any restrictions" (Def. Reply Mem., at 5 (citing *Rodriguez v. Atria Sr. Living Group, Inc.,* 887 F. Supp. 2d 503, 511-12 (S.D.N.Y. 2012)), the provision of such an opinion does not necessarily permit the employer to assume that the employee lacks a disability. Indeed, to make out a *prima facie* case, the employee must show *both* a disability *and* that he or she is able to work. *See Hernandez,* 2015 WL 321830, at *17. Furthermore, a plaintiff is not required to provide a formal diagnosis or medical evidence in order to put an employer on notice of a disability. *See Lyman*, 2014 WL 3417394, at *11. Tellingly, in both *McCoy* and *Rodriguez*, on which Defendant relies, the plaintiffs not only returned to work with medical reports stating that they had no restrictions, but the plaintiffs also gave no indication, thereafter, that they had ongoing medical problems. *See, e.g., McCoy,* 2014 WL 737364 at *4; *Rodriguez*, 887 F. Supp. 2d at 511-12. That is not the case here, where Plaintiff contends that he told Dr. Sweeting on multiple occasions *after* his return to work that he was having continuing pain in his arm, which caused him difficulty in performing physical examinations of his patients. (*See* Pl. 56.1 Stmt ¶¶ 49, 97.) In short, the Court finds that the evidence in the record of Plaintiff's alleged comments to Dr. Sweeting is capable of giving rise to an inference that Dr. Sweeting had notice of Plaintiff's disability.

The Court also finds that there is sufficient evidence in the record for a reasonable juror to conclude that (assuming a Cat's Paw theory of liability is available) any discriminatory animus possessed by Dr. Sweeting could be imputed to Dr. Jarvis.  As discussed above, under such a theory, the discriminatory animus of a non-decisionmaker can be imputed to an otherwise non-biased decisionmaker who negligently relied on the accusations or determinations of the biased employee.  *See Vasquez,* 835 F.3d at 270.  Here, there is no indication in the record that Dr. Jarvis, the decisionmaker, undertook any kind of investigation into Plaintiff's alleged misconduct, rather than accepting, at face value, Dr. Sweeting's representations that such misconduct had occurred.  (*See generally* Def. 56.1 Stmt.; Def. Mem.)  A reasonable juror could, therefore, conclude that, in terminating Plaintiff's employment, Dr. Jarvis negligently relied solely on Dr. Sweeting's recommendation, including any discriminatory animus motivating that recommendation.  *Nagle v. Marron,* 663 F.3d 100, 117 (2d Cir. 2011) ("Under th[e] so-called "Cat's Paw" theory, a final decisionmaker that relies entirely on an improperly motivated recommendation from a subordinate may render the municipality liable."); *Britt v. Merrill Lynch & Co.,* No. 08cv5356 (GBD), 2011 WL 4000992, at *8 (S.D.N.Y. Aug. 26, 2011) ("Cat's Paw" theory applies "when the decisionmakers are overly deferential to the biased individual's recommendations").  The cases relied upon by Defendant, *Jones v. Target Corp.,* No. 15cv4672 (MKB) (LB), 2018 WL 1377301 (E.D.N.Y. Mar. 16, 2018), *aff'd,* 792 F. App'x 54 (2d Cir. 2019) and *Prophete-Camille v. Stericycle, Inc.,* No. 14cv7268 (JS) (AKT), 2017 WL 570769 (E.D.N.Y. Feb. 13, 2017) (cited in Def. Reply Mem., at 10), do not compel a different result, as, in both cases, the employer took additional steps to investigate whether, in each case, the plaintiffs' termination was appropriate, *see Jones,* 2018 1377301, at *8; *Prophete-Camille,* 2017 WL 570769, at *14.

For these reasons, the Court concludes that, assuming the availability of a Cat's Paw theory of liability, Plaintiff has come forward with evidence sufficient to satisfy all of the elements of a *prima facie* case, under the ADA.  Plaintiff's claim nevertheless fails, however, because, as explained below, Plaintiff has not demonstrated a material issue of triable fact as to whether the legitimate, nondiscriminatory reason for Plaintiff's termination that Defendant has proffered was a pretext for unlawful discrimination.  Nor, following Defendant's proffer, has Plaintiff come forward with evidence capable of showing that his disability was the "but-for" cause of his termination.

### 2. Defendant's Challenge to Plaintiff's Proof on the Ultimate Issue of Discriminatory Termination

Having concluded that the evidence submitted by Plaintiff could enable a jury to find in his favor on his *prima facie* case, the Court turns to the remaining parts of the *McDonnell-Douglas* analysis – whether Defendant has proffered a legitimate, non-discriminatory reason for Plaintiff's termination and, if so, whether Plaintiff has come forward with evidence capable of demonstrating that Defendant's stated reason was pretextual and that its real reason was discriminatory.  As discussed below, the Court finds that Defendant has proffered a legitimate, non-discriminatory reason for Plaintiff's termination, and that Plaintiff cannot prevail in arguing that this reason was a pretext for unlawful discrimination.

### a. Defendant's Proffer of a Legitimate Non-Discriminatory Reason For Plaintiff's Termination

Defendant contends that Plaintiff was terminated for violating company policy, specifically for his violation of QHC's provisions in the employee handbook regarding theft of company time.  (Def. Mem. at 16; Def. Reply Mem. at 7-9.)  Unquestionably, violation of company policy is a legitimate, nondiscriminatory reason for an employer to terminate the

employment of an employee.  *LeBlanc v. United Parcel Serv.*, No. 11cv6983 (KPF), 2014 WL

1407706, at *15 (S.D.N.Y. Apr. 11, 2014) (termination of employee for violating company's

integrity policy was nondiscriminatory); *Pacenza v. IBM Corp.,* No. 04cv5831 (PGG), 2009 WL

890060, at *12 (S.D.N.Y. Apr. 2, 2009) (finding that discharge of plaintiff for violating company

"internet usage and harassment policies" was a legitimate, non-discriminatory reason for

termination); *Brown v. The Pension Boards,* 488 F. Supp. 2d 395, 406 (S.D.N.Y. 2007)

("Certainly, an employer is entitled to discharge an employee who fails to follow company rules

. . . ." (internal citation omitted)).

        Plaintiff appears to argue (albeit in the context of his pretext arguments) that some of the

reasons provided by Dr. Sweeting for her recommendation were, by their nature, inherently

discriminatory, as they sought to penalize Plaintiff for seeking medical care for his disability.

Specifically, Plaintiff appears to contend that Dr. Sweeting should not have recommended his

termination for failing to report to work on June 1, 2015, when he reported the need for a sick

day, and, likewise, that she should not have recommended his termination for seeing his doctors

for a medical need, even if he saw them during his work shift.  (See Pl. Mem. at 21.)  At a

minimum, Plaintiff seems to contend that, Dr. Sweeting's reliance on those incidents as the basis

for her recommendation of termination suggests that her recommendation was discriminatory

and illegitimate.  (*Id.*)

        The ADA, however, "does not immunize disabled employees from discipline or

discharge for incidents of misconduct in the workplace," *Krasner v. City of N.Y.,* No. 11cv2048

(PGG), 2013 WL 5338558 (S.D.N.Y. Sept. 23, 2013) (collecting cases), and even if an incident

of misconduct is connected to an alleged disability, an employer is entitled to discipline an

employee for that incident, so long as it is not pretext for discrimination, *see McElwee v. Cty. of*

22

*Orange*, 700 F.3d 635, 641 (2d Cir. 2012) ("under the ADA, workplace misconduct is a

legitimate and nondiscriminatory reason for terminating employment, even when such

misconduct is related to a disability"); *Pearson v. Unification Theological Seminary*, 785

F. Supp. 2d 141, 161 (S.D.N.Y. 2011) (rejecting "plaintiff's argument that since her disability

caused her conduct, she was in essence fired because of her disability"); *Szuszkiewicz v.*

*JPMorgan Chase Bank*, 257 F. Supp. 3d 319, 327-28 (E.D.N.Y. 2017) ("that a disabled

plaintiff's 'misconduct was a manifestation of his disability is immaterial because the ADA does

not immunize [him] from discipline or discharge for incidents of misconduct in the workplace.'"

(citation omitted)).

Plaintiff concedes that he did not report to work on June 1, 2015, when he was scheduled

to do so, and that he did not inform Defendant that he would not be reporting to work that day

until after he failed to appear and was contacted by an HR representative.  (Pl. 56.1 Stmt.

¶¶ 22-25.)  He also concedes that, on July 9, 2015, he attended personal medical appointments at

a time when he was still on his work shift at QHC.  (*Id.* ¶¶ 30-33.)  If, as Defendant represents,

these incidents were both violative of company policy, then they would have afforded a

legitimate reason for Plaintiff's termination, and Plaintiff cannot render that reason *illegitimate*

simply by claiming that the policy violations were connected to his alleged disability.  The Court

therefore concludes that Defendant has met its burden of proffering a legitimate, non-

discriminatory reason for Plaintiff's discharge.

**b.**    **Plaintiff's Claimed Evidence of Pretext**

In light of Defendant's proffer of a legitimate, non-discriminatory reason for Plaintiff's

discharge, which is itself supported by evidence in the record, Plaintiff must produce evidence

capable of showing that Defendant's reason was a pretext for disability discrimination.  *Sista,*

445 F.3d at 169.  Further, as set forth in *Natofsky,* claims under the ADA must be analyzed under a "but-for" standard of causation.  *Natofsky*, 921 F.3d at 348; *see also Wu v. Metro. Transportation Auth.,* No. 18cv6543 (GHW), 2020 WL 615626, at *10 (S.D.N.Y. Feb. 7, 2020) (applying *Natofsky's* "but-for" standard to claims under NYSHRL).  By contrast, NYCHRL claims are analyzed under the "motivating factor" standard.  *Weiss v. JPMorgan Chase & Co.,* No. 06cv4402 (DLC), 2010 WL 114248 (S.D.N.Y. Jan. 13, 2010).  Because the Court concludes that Plaintiff has failed to meet even the lesser burden under the "motivating factor" standard, the Court will analyze whether Plaintiff's evidence establishes a genuine dispute of fact that his disability played a motivating factor in his termination.

Plaintiff makes four separate arguments in support of his position that he is entitled to a trial on the question of whether Defendant's proffered non-discriminatory reason for his termination was pretextual.  (Pl. Mem., at 17-21.)  First, Plaintiff argues that the temporal proximity between his informing Dr. Sweeting of his disability and her recommendation of his termination evidences pretext.  (*Id.,* at 18-19.)  Second, Plaintiff argues that the primary reason for his termination (attending personal medical appointments during his shift) was pretextual because (a) he was away from his office for less than 10 minutes; (b) he kept no patients waiting; and (c) his absence was only a "minor infraction" under Defendant's policy, thus demonstrating that Defendant failed to follow its own policy in terminating his employment.  (*Id.*, at 19-20.)  Third, Plaintiff argues that Dr. Sweeting did not include his June 1, 2015 absence in her July 10 recommendation to terminate Plaintiff's employment, and that the inclusion of that incident in the later August 10 recommendation shows that Defendant's reasons "shifted over time."  (*Id.*, at 20-21.)  Finally, Plaintiff argues that Dr. Sweeting demonstrated discriminatory animus when, upon Plaintiff's informing her that he would not be reporting to work on June 1, 2015,

Dr. Sweeting allegedly responded by saying, "I don't care" and "this is not my problem."  (*Id.*, at 21.)  The Court will address each of these arguments in turn.

### i.    Temporal Proximity of Notice of Disability and Plaintiff's Termination

Plaintiff first argues that the "temporal proximity" between Dr. Sweeting's receiving notice of Plaintiff's disability and her recommendation to terminate his employment suggests that the legitimate reason proffered by Defendant is pretextual.  As a preliminary matter, the law is clear that temporal proximity, while potentially allowing a plaintiff to make out a *prima facie* case, is not sufficient, standing alone, to create a triable issue of fact regarding pretext. *Francis v. Hartford Bd. of Educ., City of*, 760 F. App'x 34, 37 (2d Cir. 2019) (summary order) (citing *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir.2010)); *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 263 (S.D.N.Y. 2015) (same); *Stuart v. T-Mobile USA, Inc.*, No. 14cv4252 (JMF), 2015 WL 4760184, at *7 (S.D.N.Y. Aug. 12, 2015) (same); *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 456 (S.D.N.Y. 2013), *aff'd sub nom. Dabney v. Bed Bath & Beyond*, 588 F. App'x 15 (2d Cir. 2014) (same).  The same is true even if Plaintiff establishes temporal proximity in conjunction with an alleged "stray remark."  *Clark*, 96 F. Supp. 3d at 256-57 (temporal proximity, even when considered in conjunction with stray remark, is insufficient to establish pretext).  Thus, as Plaintiff has failed, for the reasons explained below, to adduce other evidence of pretext, any temporal proximity here would be insufficient to establish pretext.

In any event, Plaintiff has not actually shown temporal proximity between a particular date when he purportedly gave Dr. Sweeting notice of his disability and the date when she recommended his termination.  Rather, Plaintiff contends that Dr. Sweeting's initial recommendation to terminate Plaintiff's employment was made after Plaintiff made statements

to her "on a number of occasions" regarding his disability.  (Pl. Mem., at 18-19).  Plaintiff points

to no record evidence – even his own testimony – to establish when he purportedly made these

statements.  (*Id;* Pl. 56.1 Stmt. ¶ 49.)  In any event, the record reflects that Dr. Sweeting's

July 10 recommendation was precipitated by Plaintiff's having attended personal medical

appointments during his shift the day before (*i.e.*, on July 9), which was "sufficient to justify

Plaintiff's termination" and would defeat any inference that Plaintiff's presumably earlier

comments to Dr. Sweeting are what led to the July 10 recommendation.  *Hahn v. Bank of Am.*

*Inc.*, No. 12cv4151 (DF), 2014 WL 1285421, at *19 (S.D.N.Y. Mar. 31, 2014), *aff'd sub nom.*

*Hahn v. Bank of Am. N.A.*, 607 F. App'x 55 (2d Cir. 2015).

Moreover, Plaintiff cannot establish temporal proximity by trying to link his purported

comments to Dr. Sweeting regarding the results of his August 3 MRI with Dr. Sweeting's

August 10 Memorandum, given Plaintiff's concession that Dr. Sweeting had already

recommended his termination in July.  *Soares v. Univ. of New Haven*, 154 F. Supp. 2d 365, 372-

73 (D. Conn. 2001) ("plaintiff cannot establish that she was discharged because of her handicap,

as the decision to terminate her was made over a week before any of the decision-makers learned

of plaintiff's illness"); *cf. Williams v. Salvation Army,* 108 F. Supp. 2d 303, 314 (S.D.N.Y. 2000)

(no temporal proximity where plaintiff's supervisor decided to terminate plaintiff before

disabling injury occurred).

### ii.    Purported Inconsistency Between <br> Termination Decision and Company Policy

Plaintiff also argues that the reason given for his termination was pretextual because,

essentially, he did not violate Defendant's theft-of-time policy and his conduct was, at worst,

merely a brief unauthorized absence from his assigned work area during working hours.  (Pl.

Mem., at 19-20.)  As Defendant's written policy lists such unauthorized absences as "minor

infractions" (Gold Decl., Ex. S), which would warrant only corrective action, Plaintiff claims

that Defendant failed to follow its own policies and procedures in terminating his employment,

raising an inference of pretext.  (Pl. Mem., at 19-20.)

"It is well settled that courts in discrimination cases should not serve as 'super-personnel

departments,' reviewing employer disciplinary decisions."  *Dabney,* 958 F. Supp. 2d at 454.

Thus, when a violation of company policy is given as the reason for termination, the question in

in determining whether the plaintiff has adduced evidence of pretext is not whether the plaintiff

in fact violated company policy, but whether he or she has adduced evidence sufficient for a

reasonable juror to find that, in terminating the plaintiff, the defendant "did not genuinely

believe" that the plaintiff had violated policy.  *Id.* at 453.

In this case, Plaintiff concedes that he left his work area on July 9 to attend two personal

medical appointments, while still "on the clock" for his daily shift.  (*See* Def. & Pl. 56.1 Stmts.

¶ 30; *see supra* n.4.)  Whether the duration of this absence or its impact on the waiting times of

patients was significant enough to warrant Plaintiff's termination is not for the Court to decide.

*Saenger v. Montefiore Med. Ctr.,* 706 F. Supp. 2d 494, 509 (S.D.N.Y. 2010) (citing *Gambello v.

Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 224 (E.D.N.Y. 2002) ("Plaintiff's

fundamental disagreement with the conclusions his supervisors drew from incidents which he

admits occurred . . . is not evidence that his supervisors' appraisals were a sham, invented to

mask discrimination")); *Connell v. Consol. Edison Co. of New York*, 109 F. Supp. 2d 202, 210

(S.D.N.Y. 2000) (ultimate issue is not whether defendant "over-reacted" to Plaintiff's

misconduct, but whether plaintiff was dismissed for discriminatory reasons).

Nor can the Court conclude on the undisputed record before it that Defendant violated its

own policy by choosing to terminate Plaintiff's employment.  Defendant's Employee Handbook

specifically provides that "theft of time" is a "major infraction" which can result in termination. (Gold Decl., Ex. S.)  Under the policy, theft of time includes activities like "loafing [and] sleeping on the job."  (*Id.*)  Furthermore, the QHC Administrator, Sarina Jean-Louis, testified that she understood the "theft of time" policy to refer to using Company time for "personal gain."  (Schmalz Decl., Ex. C, at 132:18-25.)  While Plaintiff insists that it is "obvious" that attending personal medical appointments was not for his "personal gain," presumably meaning his financial gain (*see* Pl. Mem., at 21), neither Jean-Louis's testimony, nor the policy, nor anything else in the record before the Court suggests that "personal gain," as referenced in the policy, must be financial.  Indeed, the examples given above – loafing and sleeping on the job – would not be suggestive of financial gain.  Thus, while Plaintiff may disagree with Defendant's asserted view that his behavior was sufficiently serious to warrant termination, he has not presented evidence from which it could be inferred that the application of the policy was a pretext for discrimination.

### iii.   Purported Inconsistencies Between the July 10 Email and the August 10 Memorandum

Plaintiff's next argument is premised on what he characterizes as "contradictory" and "shift[ing]" reasons for his recommended termination, as between the July 10 Email and the August 10 Memorandum.  (Pl. Mem., at 20-21.)  In support of this argument, Plaintiff asserts (1) that neither the July 10 nor the August 10 document specifically contained the words "theft of time"; and (2) that, in the August 10 Memorandum, Dr. Sweeting referenced Plaintiff's failure to report to work on June 1, 2015, whereas she had not included it in her initial July 10 Email.  (*Id.*)

While Plaintiff is correct that "shifting and somewhat inconsistent explanations" for a termination decision can raise an issue of pretext, *Zann Kwan v. Andalex Grp., LLC,* 737 F.3d 834, 847-47 (2d Cir. 2013) (cited in Pl. Mem., at 21), it is equally true that "*Kwan* does not hold

that a plaintiff can demonstrate pretext simply by showing that the set of proffered explanations was not identical at all times," *Richardson v. Bronx Lebanon Hosp.*, No. 11cv9095 (KPF), 2014 WL 4386731, at \*16 (S.D.N.Y. Sept. 5, 2014).  In order to demonstrate that an employer's justifications are pretextual, the allegedly "shifting" reasons "must be not merely different, but inconsistent with one another."  *Id.*, at \*16.

Both the July 10 and August 10 recommendations from Dr. Sweeting detail the events of July 9, when Plaintiff attended personal medical appointments during his shift.  (*Compare* Schmalz Decl., Ex. K *with id.*, Ex. M).  That the words "theft of time" do not appear specifically in the recommendations do not render Defendant's explanations inconsistent.  Similarly, the omission of the June 1, 2015 incident from the July 10 recommendation is not an "inconsistency."  Rather, the record reflects that at all relevant times, Dr. Sweeting and Defendant have relied on the events of July 9 as the reason for Plaintiff's termination – a reason that, according to Defendant, was bolstered by various prior infractions of company policy. (Dkt. 43, Ex. K; *id.* Ex. M; Def. Mem. at 12-13; Def. Reply Mem. at 6-8.)  While the June 1, 2015 incident was added to the August 10 recommendation as a "prior infraction" that reinforced the decision to terminate Plaintiff, its inclusion (or exclusion) did not meaningfully change Defendant's reasons for terminating Plaintiff.  (*Id.*)  On these facts, no reasonable trier of fact could conclude that Defendant's justification for Plaintiff's termination changed over time, or that internal documents supporting his termination were in contradiction.  *Richardson,* 2014 WL 4386731 \*16.  Thus, this argument for pretext also fails.

### iv.    Allegedly Discriminatory Remark by Dr. Sweeting

Having failed to adduce other evidence capable of demonstrating pretext, Plaintiff's final attempt at establishing a material issue of fact regarding pretext is based on Dr. Sweeting's

having allegedly told Plaintiff, "I don't care" and "this is not my problem," when she learned from Plaintiff that he would not be reporting to work on June 1, 2015, as scheduled.  (Pl. Mem., at 21.)  Plaintiff claims that these remarks could "give[] rise to an inference" that Dr. Sweeting had a discriminatory animus towards Plaintiff because of his disability.  (*Id.*)

"Stray remarks, even if made by a decision-maker, do not constitute sufficient evidence [to support] a case of employment discrimination."  *Greene v. Enlarged City Sch. Dist. of City of Middletown, N.Y.*, No. 12cv4545 (DLC), 2014 WL 1688133, at *4 (S.D.N.Y. Apr. 29, 2014), *aff'd sub nom. Greene v. Enlarged City Sch. Dist. of Middletown, N.Y.*, 606 F. App'x 624 (2d Cir. 2015) (citation omitted).  In evaluating whether a remark is "stray," the Second Circuit has instructed courts to evaluate "(1) who made the remark (*i.e.*, a decision-maker, a supervisor, or a low-level coworker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (*i.e.*, whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (*i.e.*, whether it was related to the decision-making process)."  *Id.* (quoting *Henry v. Wyeth Pharma., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)).  Specifically, the Second Circuit has noted that "[t]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination.  The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative the remark will be."  *Id.* (same).

Dr. Sweeting's alleged remarks unquestionably fall into the category of "stray remarks."  The remarks do not, on their face, evince any discriminatory animus by Dr. Sweeting on the basis of Plaintiff's disability; rather, they appear to express frustration and impatience with Plaintiff's failure to report to work when he was supposed to do so.  *See id.*, at *5 (comment by

supervisor referring to plaintiff as "poor woe is me type" did not "specifically reference [p]laintiff's disability" but "refer[red] far more directly to the long history of discord between [plaintiff] and her supervisors); *Clark v. Jewish Childcare Ass'n, Inc.,* 96 F. Supp. 3d 237, 253 (S.D.N.Y. 2015) (comments that "management was upset" that Plaintiff took second disability leave were not "obviously discriminatory").  Nor is there any evidence that the alleged remark was made in the context of the decision-making process.  *See Greene,* 2014 WL 1688133, at *4 (stray remark that was "remote with respect to the alleged adverse action" did not raise inference of discrimination); *Soto v. Marist Coll.*, No. 17cv7976 (KMK), 2019 WL 2371713, at *5 (S.D.N.Y. June 5, 2019) (statements unrelated to the decision-making process do not raise an inference of discrimination) (collecting cases); *Williams v. Victoria's Secret*, No. 15cv4715 (PGG) (JLC), 2017 WL 1162908, at *8 (S.D.N.Y. Mar. 28, 2017) ("Remarks are especially likely to be considered "stray" when made by a decision maker unrelated to the decision-making process temporally remote from the date of decision" (quoting *Woodard v. TWC Media Sols., Inc.*, No. 09cv3000 (BSJ) (AJP), 2011 WL 70386, at *7 (S.D.N.Y. Jan. 4, 2011))); *Knox v. Town of Se.*, No. 11cv8763 (ER), 2014 WL 1285654, at *13 (S.D.N.Y. Mar. 31, 2014), *aff'd,* 599 F. App'x 411 (2d Cir. 2015) ("stray remarks . . . by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision" (citation omitted)).

As the sole remarks that, according to Plaintiff, evidence discriminatory animus on the part of Dr. Sweeting neither demonstrate animus on the basis of disability, nor were apparently connected to the decision-making process that resulted in Plaintiff's termination, they cannot be found to create a material, triable issue of fact regarding pretext.

In short, by conceding an unannounced failure to report to work when scheduled, and, more centrally, by admitting to later, unauthorized absences during his work shift, Plaintiff has effectively conceded that he violated Defendant's employment policies.  Further, he has not come forward with any material evidence that could lead a reasonable trier of fact to conclude that Defendant's assertion that it terminated his employment on the basis of this violation was a pretext for disability discrimination.  Indeed, the Court finds that, on the evidentiary record presented, no reasonable juror could conclude that Plaintiff's disability was even a motivating factor in Dr. Sweeney's recommendation of termination, let alone that, under a Cat's Paw theory (assuming it could apply to his claim), Plaintiff would not have been terminated "but for" Dr. Sweeney's allegedly discriminatory motive.  *Natofsky v. City of N.Y.,* 921 F.3d at 350-51. For these reasons, Plaintiff's ADA claim cannot survive summary judgment.  *See Jacobson v. Capital One Fin. Corp.*, No. 16cv06169 (CM), 2018 WL 6817064, at *24 (S.D.N.Y. Dec. 12, 2018) (noting that "a finding of discrimination is the necessary predicate for any 'Cat's Paw' argument").

### B.    Plaintiff's Claims Under the NYSHRL and NYCHRL[6]

Claims under the NYSHRL are generally construed under the same standards as the ADA, *see Pena-Barrero,* 2017 WL 1194477 at *14; *Wu,* 2020 WL 615626, at *10.  Dismissal of Plaintiff's NYSHRL claim is, therefore, also warranted.

Although the NYCHRL claims are analyzed "separately and independently from any federal and state law claims (*id.*), NYCHRL claims are routinely dismissed at the summary

---

[6] Neither of the parties explicitly address Plaintiff's NYSHRL or NYCHRL claims separately from Plaintiff's ADA claim.  Nevertheless, for the reasons set forth herein, the Court has independently analyzed Plaintiff's claims under these statutes and concludes that summary judgment is also warranted on those claims.

judgment stage where the undisputed record demonstrates no issue of fact regarding whether Defendant's actions were motivated by discrimination. *Pena-Barrero,* 2017 WL 1194477 at *14; *Wu,* 2020 WL 615626, at *11; *see also, e.g., Hill v. New York City Hous. Auth.*, 220 F. Supp. 3d 499, 509 (S.D.N.Y. 2016) ("the NYCHRL does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56" (quoting *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 532 (S.D.N.Y. 2015) (internal quotation marks omitted) (collecting cases))); *Richardson,* 2014 WL 4386731 at *20 (dismissing NYCHRL claim where "Plaintiff [] proffered no evidence to doubt the veracity of Defendant's business rationale for terminating her employment"); *Snowden v. Trustees of Columbia Univ.,* No. 12cv3095 GBD, 2014 WL 1274514, at *9 (S.D.N.Y. Mar. 26, 2014), *aff'd*, 612 F. App'x 7 (2d Cir. 2015); *McDonnell v. Schindler Elevator Corp.*, No. 12cv4614 (VEC), 2014 WL 3512772, at *16 (S.D.N.Y. July 16, 2014), *aff'd*, 618 F. App'x 697 (2d Cir. 2015).  Thus, for the same reasons discussed above, Plaintiff's NYCHRL claims are also dismissed.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendant's motion for summary judgment (Dkt. 52) is granted, and Plaintiff's claims are dismissed in their entirety, with prejudice.  The Clerk of Court is directed to close this case on the Court's Docket.

Dated:  New York, New York
       September 1, 2020

                                       SO ORDERED

                                       DEBRA FREEMAN
                                       United States Magistrate Judge

<u>Copies to</u>:
All counsel (via ECF)